Billy J. CHANNEL, Plaintiff-Appellant,

v.

Margaret M. HECKLER, Secretary of the United States Department of Health and Human Services, Defendant-Appellee.

No. 83–2322.

United States Court of Appeals, Tenth Circuit.

Oct. 29, 1984.

Philip Hornbein, Jr., of Hornbein, MacDonald, Fattor & Buckley, P.C., Denver, Colo., for plaintiff-appellant.

Robert N. Miller, U.S. Atty., Colo., and Robert Gay Guthrie, Asst. U.S. Atty., Denver, Colo., for defendant-appellee.

Before SETH, McKAY and SEYMOUR, Circuit Judges.

PER CURIAM.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); Tenth Cir.R. 10(e). The cause is therefore ordered submitted without oral argument.

Billy J. Channel appeals from a judgment of the district court affirming a decision of the Secretary of Health and Human Services that denies his claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* and 1381 *et seq.* He claims, among other things, that the Secretary misapplied the Medical-Vocational Guidelines used in de-

termining whether jobs exist in the national economy for claimants of various proven strength abilities. Because we agree that the administrative law judge (ALJ) did misapply the guidelines, we vacate the district court's judgment and order that the matter be remanded to the Secretary for further proceedings.

## I.

The Secretary promulgated medical-vocational guidelines in 1978 to assist in the determination of social security disability claims. *See* 20 C.F.R. § 404, subpt. P, app. 2 (1983) (hereinafter cited as App. 2). These guidelines, often termed "the grids," consider a claimant's residual functional capacity—the functional level of work that he is physically able to perform on a sustained basis—in relation to his age, education, and work experience, and then set forth corresponding rules that identify whether there exist a significant number of jobs in the national economy that the claimant can perform. Where the claimant's characteristics coincide with the criteria of a specific rule in the grids, that rule directs a conclusion as to whether the claimant is disabled.

In *Heckler v. Campbell*, 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983), the Supreme Court examined these guidelines and concluded that the Secretary properly could rely on them in appropriate circumstances to determine disability claims. In upholding the validity of the grids, however, the Court recognized that "some claimants may possess limitations that are not factored into the guidelines," and cautioned that under the terms of the regulations themselves, the grids are applicable "only when they describe a claimant's abilities and limitations accurately." *Id.* 103 S.Ct. at 1955 n. 5. The Court observed that "[i]f an individual's capabilities are not described accurately by a rule, the regulations make clear that the individual's particular limitations must be considered." *Id.*

At the time of his disability hearing in July 1982, Channel was forty-seven years old. He had an eighth grade education and past work experience as a butcher, a truck driver, and a roofer. On April 2, 1981, while working as a roofer, he slipped on hot tar and suffered second and third degree burns on his hands, ankles, and buttocks. He was hospitalized until April 24, during which time he had skin grafts on all of the burned areas.

At the hearing, the ALJ received medical evidence of Channel's condition as well as Channel's own testimony. The treating physician's report in December 1981 stated that Channel "has slowly improved since his dismissal but continues to be unable to use the left hand any length of time without abrasing the skin or developing blisters. The right foot also is extremely painful with limited dorsiflexion because of thin skin." Rec., vol. II, at 125. The doctor noted in March 1982 that Channel still suffered from a ten percent loss of range of motion in his left hand and that the skin of the left wrist blistered and became "extremely tender when he uses the hand for a short period of time." *Id.* at 128. The medical reports also showed that Channel had hypothesia (loss of feeling) of the four smaller toes on his right foot.

Channel testified that he is left handed and that his grip and coordination were bad; that if he used his left hand "too much, the sides would crack and split," *id.*, vol. II, at 40; that he could dial a telephone and write a list; and that he did mow the lawn. He stated that he could walk four or five blocks at a time before his right foot would get numb and that he could stand for fifteen minutes at a time, but that he could not drive because of his foot. He spent his days watching television and doing some gardening. He testified that although he had obtained employment for three weeks in September 1981, the work, which included handling an air hose, made his hand crack.

Based on this evidence, the ALJ found that Channel was not capable of returning to his past work but that he retained the ability to perform sedentary work. The ALJ then applied Rule 201.19 of the guidelines, which directed a conclu-

sion of not disabled.[1] The district court concluded that substantial evidence supported the ALJ's determination and affirmed. On appeal, Channel contends the Secretary erred in mechanically applying the grids despite evidence indicating that he could not perform a full range of sedentary work.[2]

## II.

The claimant bears the burden of proving a disability within the meaning of the Social Security Act. 42 U.S.C. § 423(d)(5). Once the claimant makes a prima facie showing of disability that prevents his engaging in his prior work activity, however, the burden of going forward shifts to the Secretary, who must show that the claimant retains the capacity to perform an alternative work activity and that this specific type of job exists in the national economy. *Id.* § 423(d)(2)(A); *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir.1983); *see also Salas v. Califano*, 612 F.2d 480, 482–83 (10th Cir.1979).

In many cases, the Secretary can meet this burden by relying on the grids. Through the grids, the Secretary has taken administrative notice of the number of jobs that exist in the national economy at the various functional levels (*i.e.*, sedentary, light, medium, heavy, and very heavy). App. 2, § 200.00(b). "Where the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule," the existence of jobs in the national economy for that claimant is established, and the rule "directs a conclusion as to whether the individual is or is not disabled." *Id.* § 200.00(a)–(b).

However, "[w]here any one of the findings of fact does not coincide with the corresponding criterion of a rule, the rule does not apply in that particular case and, accordingly, does not direct a conclusion of disabled or not disabled." *Id.* § 200.00(a). In such circumstances, "full consideration must be given to all of the relevant facts of the case," *id.*, and the existence of jobs in the national economy for that individual must be further considered "in terms of what kinds of jobs or types of work may be either additionally indicated or precluded." *Id.* § 200.00(b); *see also* 20 C.F.R. § 404.-1569; 43 Fed.Reg. 55,349, 55,351–53 (1978). Under the regulations, therefore, the grids may not be applied conclusively in a given case unless the claimant's characteristics precisely match the criteria of a particular rule.

This "exact fit" requirement for application of the grids frequently comes into play where a claimant's residual functional capacity (RFC) is concerned.[3] Placement in one of the five categories of RFC depends on a claimant's "maximum sustained work capability"—that is, his "capacity for work activity on a regular and continuing basis." App. 2, § 404.1545(b); App. 2, § 200.00(c); *see* Fed.Reg. at 55,358. Significantly, a claimant must be able to perform the *full range* of such work on a daily basis in

---

1. Rule 201.19 directs a finding of "not disabled" for a claimant 45 to 49 years old, with a limited education, non-transferable work skills, and a maximum sustained work capability (i.e., residual functional capacity) limited to sedentary work. App. 2, § 201.19.

2. Although Channel also argues on appeal that he is disabled under the provisions of 20 C.F.R. § 404, subpt. P, app. 1, sec. 1.13, he concedes that he did not specifically present this argument to the district court. Under these circumstances, we will not consider the issue on appeal. *See Singleton v. Wulff*, 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976); *Neu v. Grant*, 548 F.2d 281, 287 (10th Cir.1977).

3. Although the age, education, and work experience categories traditionally have presented few problems, the regulations themselves caution that the age factor should not be mechanically applied in borderline situations, *see* 20 C.F.R. § 404.1563; 43 Fed.Reg. at 55,359, and one court has struck down the age categories as arbitrary. *See Broz v. Schweiker*, 677 F.2d 1351, 1359–61 (11th Cir.1982), *modified,* 721 F.2d 1297 (11th Cir.1983); *see also Kirk v. Secretary of Health & Human Services*, 667 F.2d 524, 539–41 (6th Cir.1981) (grids should not have been applied where no category of education perfectly matched claimant's abilities), *cert. denied,* 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983).

order to be placed in a particular RFC category. *See* App. 2, § 201.00(h). As the report accompanying the initial promulgation of the grids points out, *"within a range of work (sedentary, light, medium, heavy or very heavy) unless the individual possesses physical capacities equal to the strength requirements for most of the jobs in that range, he or she cannot be classified as able to do the pertinent range of work."* 43 Fed.Reg. at 55,361 (emphasis added). *See also O'Leary v. Schweiker,* 710 F.2d 1334, 1339 (8th Cir.1983); *Santise v. Schweiker,* 676 F.2d 925, 934 (3d Cir.1982); *Kirk v. Secretary of Health & Human Services,* 667 F.2d 524, 537 (6th Cir.1981), *cert. denied,* 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983); *Davis v. Schweiker,* 536 F.Supp. 90, 100 (N.D.Cal.1982).

In addition, because the grids consider only impairments that result in *exertional* or strength limitations, they may not be fully applicable where other, *nonexertional* impairments are present. As the regulations make clear, the RFC categories in the grids are based on the physical exertion requirements of work in the national economy. *See* 20 C.F.R. § 404.1567. Thus, a claimant's placement in a particular category depends on his "ability to do physical activities such as walking, standing, lifting, carrying, pushing, pulling, reaching, [and] handling." *Id.* § 404.1545(b).[4] However, "[s]ome medically determinable impairments, *such as skin impairments,* epilepsy, and impairments of vision, hearing or other senses, postural and manipulative limitations, and environmental restrictions do not limit physical exertion." *Id.* § 404.-1545(d) (emphasis added). Mental impairments, such as the "ability to understand, to carry out and remember instructions, and to respond appropriately to supervi-

sion, co-workers and work pressures in a work setting," *id.* § 404.1545(c), are likewise nonexertional, as are psychiatric disorders, chronic alcoholism, drug dependence, dizziness, and pain. *See Odle v. Heckler,* 707 F.2d 439, 440 (9th Cir.1983); *McCoy v. Schweiker,* 683 F.2d 1138, 1148 (8th Cir. 1982).

The effect of a particular nonexertional impairment varies depending on the circumstances of the case. As the report accompanying the regulations explains:

> *"Where a person has nonexertional* (or additional exertional) *limitations, the ranges of work he or she can perform* (sedentary to very heavy) *are diminished by exclusion of the particular occupations or kinds of work within those ranges that entail use of the abilities which the person has lost.* In some cases, the exclusion will have a negligible effect, still leaving a wide range of work capability within the functional level; while in others the range of possible work may become so narrowed that the claimant does not have a meaningful employment opportunity."

43 Fed.Reg. at 55,358 (emphasis added). Moreover, "[d]ifferent types of functional loss may be more critical to some exertional levels than to others; *e.g.,* loss of fine dexterity would narrow the range of sedentary work much more than it would for light, medium or heavy work." *Id.* at 55,-358–59. As the report notes, "[t]his particular area does not lend itself to a great degree of specificity, and judgments are required ...." *Id.*[5]

In recognition of the limited utility of the grids in such cases, the regulations set out the following procedure for determining claims where both exertional and nonexertional impairments are present:

---

**4.** For example, sedentary work is defined as involving "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a). Although such work primarily involves sitting, a certain amount of walking and standing is also required. *Id.*

**5.** The situation is further clouded by the sometimes blurry distinctions between exertional and

nonexertional impairments. For example, limitations in such things as pushing, pulling, gripping, and bending may have both nonexertional (manipulative, postural) and exertional (strength) characteristics. *See Gory v. Schweiker,* 712 F.2d 929, 931 (4th Cir.1983) (claimant's pain and leg swelling resulted from overactivity and therefore were exertional rather than nonexertional limitations).

"(2) *[W]here an individual has an impairment or combination of impairments resulting in both strength limitations and nonexertional limitations,* the rules in the subpart are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone and, if not, *the rule(s)* reflecting the individual's maximum residual strength capabilities, age, education, and work experience *provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations.*"

App. 2, § 200.00(e)(2).

Courts have not hesitated to overturn determinations of "not disabled" where an ALJ conclusively has applied the grids without sufficiently considering the claimant's nonexertional impairments. In *Grant v. Schweiker*, 699 F.2d 189, for example, the claimant presented evidence at his hearing demonstrating that in addition to hemiparesis, an exertional impairment, he also had two nonexertional limitations—low intelligence and impaired dexterity. The ALJ, without making specific findings as to whether these impairments in fact existed, applied the grids and found the claimant not disabled. The Fourth Circuit held that "it was error for the ALJ not to make findings as to the existence of those impairments and instead simply to conclusively apply the grids' rules." *Id.* at 192. In reversing the determination and remanding for further proceedings, the court explained:

"The grids may satisfy the Secretary's burden of coming forward with evidence as to the availability of jobs the claimant can perform only where the claimant suffers solely from exertional impairments. To the extent that nonexertional impairments further limit the range of jobs available to the claimant, the grids may not be relied upon to demonstrate the availability of alternative work activities. Instead, in such cases the Secretary must produce a vocational expert to testify that the particular claimant retains the ability to perform specific jobs which exist in the national economy."

*Id.*

Similarly, in *Gagnon v. Secretary of Health & Human Services,* 666 F.2d 662, 665–66 (1st Cir.1981), the claimant produced evidence of a number of nonexertional impairments, including environmental restrictions, postural/manipulative disabilities, fainting spells, and pain. Because the ALJ simply applied the grids and made no finding as to whether or by how much the claimant's work capability was further diminished by these impairments, the First Circuit vacated the "not disabled" determination. The court noted that

"On remand, the Secretary should determine, after such proceedings as may be suitable, whether Gagnon's nonexertional disabilities are significant enough to limit his access to the full range of jobs assumed to require 'light work' strength capabilities. *If he finds that the nonexertional factors do limit Gagnon's ability to do some 'light work' jobs, then he must give 'full consideration' to 'all the relevant facts,' including the taking of expert vocational testimony if necessary, before concluding that Gagnon is either 'disabled' or 'not disabled.'*"

*Id.* at 666 (footnotes omitted) (emphasis added).

In *Allen v. Secretary of Health & Human Services,* 726 F.2d 1470 (9th Cir.1984), the ALJ recognized that the claimant could only work in an environment free of respiratory irritants such as dust and fumes, but concluded that this was not a "significant non-exertional impairment," and applied the grids. *Id.* at 1472. The Ninth Circuit ruled that this reliance on the grids was improper because the ALJ's conclusion as to the claimant's respiratory problems was not supported by any evidence of jobs the claimant could perform despite his restriction. *Id.; see also, e.g., Kail v. Heckler,* 722 F.2d 1496, 1597–98 (9th Cir.1984) (ALJ's reliance on grids was error where

claimant could not tolerate dust, fumes, or heat); *Haynes v. Heckler*, 716 F.2d 483, 485 (8th Cir.1983) (ALJ's reliance on grids was error where claimant's limitations, colon discomfort and recurrent diarrhea, were nonexertional); *McClain v. Schweiker*, 715 F.2d 866, 869 n. 1 (4th Cir.1983) (because claimant demonstrated existence of nonexertional impairment, a nervous disorder, resort to guidelines would be inappropriate and vocational expert testimony required); *Nettles v. Schweiker*, 714 F.2d 833, 836–37 (8th Cir.1983) (ALJ erred in relying solely on grids to determine claimant was not disabled without adequately considering claimant's nonexertional impairment of pain); *Burnam v. Schweiker*, 682 F.2d 456, 458 (3d Cir.1982) (ALJ erred in treating claimant's exertional and nonexertional impairments separately instead of as a whole).

### III.

In the case at bar, Channel presented evidence of his nonexertional impairments, and the ALJ recognized that Channel's skin cracked, blistered, and could become infected after even a short period of use, that he suffered a ten percent loss of range of motion in his left wrist, that his right foot was tender, and that he suffered from loss of feeling in four toes of his right foot. The ALJ concluded that Channel's "impairment must be considered quite severe, in that it significantly limits him in the performance of certain work-related functions." Rec., vol. II, at 14. Nonetheless, the ALJ concluded that "[t]hese impairments would not preclude the claimant from doing sedentary work." *Id.* Based on this conclusion the ALJ applied the grids and found that Channel was not disabled.

Absent a specific finding, supported by substantial evidence, that despite his non-exertional impairments, Channel could perform a *full range* of sedentary work on a sustained basis, it was improper for the ALJ conclusively to apply the grids in determining that Channel was not disabled. *See Allen*, 726 F.2d at 1472; *Gagnon*, 666 F.2d at 666; *cf. Cavitt v. Schweiker*, 704 F.2d 1193, 1195 (10th Cir.1983). As the ALJ concluded, Channel has a limited education and non-transferable work skills. According to the regulations:

> "Most sedentary occupations fall within the skilled, semi-skilled, professional, administrative, technical, clerical, and benchwork classifications. *Approximately 200 separate unskilled sedentary occupations can be identified, each representing numerous jobs in the national economy. Approximately 85 percent of these jobs are in the machine trades and benchwork occupational categories.* These jobs (unskilled sedentary occupations) may be performed after a short demonstration or within 30 days."

App. 2, § 201.00(a) (emphasis added). Nothing in the record indicates what percentage of these jobs require full use of both hands, or otherwise could be performed with Channel's limitations. *See Allen v. Secretary of Health & Human Services*, 726 F.2d at 1472.

Because the ALJ failed to determine on the record whether Channel could perform a full range of sedentary work despite severe nonexertional impairments, the ALJ's conclusion that Channel's nonexertional limitations did not preclude performance of sedentary work cannot be sustained. Accordingly, we remand to the district court to remand to the Secretary for further proceedings.[6] The Secretary should deter-

---

**6.** It should be noted that the mere presence of a nonexertional impairment does not automatically preclude reliance on the grids. Use of the grids is foreclosed only "[t]o the extent that nonexertional impairments further limit the range of jobs available to the claimant." *Grant v. Schweiker*, 699 F.2d 189, 192 (4th Cir.1983). *See, e.g., Blacknall v. Heckler*, 721 F.2d 1179, 1181 (9th Cir.1983) (per curiam) (reliance on grids approved where substantial evidence supported ALJ's finding that claimant's psychiatric limitations did not significantly limit range of work permitted by exertional limitations); *Odle v. Heckler*, 707 F.2d 439, at 440 (9th Cir.1983) (evidence supported conclusion that nonexertional impairments would not significantly limit claimant's exertional abilities); *Hernandez v. Heckler*, 704 F.2d 857, 862 (5th Cir.1983) (evi-

mine whether Channel's nonexertional impairments are significant enough to limit his ability to perform the full range of jobs requiring sedentary work capability. If she finds that the range of jobs available is so limited, then she may not rely on the grids but instead must give "full consideration" to "all the relevant facts," App. 2, § 200.00(e)(2), including expert vocational testimony if necessary, in determining whether Channel is or is not disabled. *See Grant v. Schweiker,* 699 F.2d at 192; *Gagnon v. Secretary of Health & Human Services,* 666 F.2d at 666.

VACATED AND REMANDED. *See* 10th Cir.R. 17(b).

dence supported ALJ's determination that nonexertional impairments did not diminish claimant's work capability); *Olsen v. Schweiker,* 703 F.2d 751, 754–55 (3d Cir.1983) (ALJ sufficiently considered evidence of all of claimant's impairments); *Cummins v. Schweiker,* 670 F.2d 81, 84 (7th Cir.1982) (application of grids proper where substantial evidence supported ALJ's finding that claimant's vision impairment would not interfere with sedentary work of which he was exertionally capable); *Kirk v. Secretary of Health & Human Services,* 667 F.2d at 524, 536–37 (6th Cir.1981) (substantial evidence supported ALJ's conclusion that "claimant's mental impairments did not significantly limit his work capacity.").