**Bruce BAKER, Social Security # 520–48–7925, Plaintiff,**

v.

**Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant.**

**No. C87–413–K.**

United States District Court, D. Wyoming.

Oct. 25, 1988.

As Amended Nov. 14, 1988.

Toshiro Suyematsu, Asst. U.S. Atty., D. Wyo., Cheyenne, Wyo., for defendant.

ORDER AFFIRMING IN PART, REVERSING IN PART, AND REMANDING DECISION OF THE SECRETARY OF HEALTH AND HUMAN SERVICES (WITH FINDINGS)

KERR, District Judge.

The above-entitled matter having come on regularly before the Court upon appeal from a decision of the Appeals Council of the Department of Health and Human Services denying plaintiff's request for review of the decision of the Administrative Law Judge (ALJ) which found plaintiff entitled to disability insurance benefits as of May 27, 1986, which appeal was submitted on the briefs without the necessity of oral argument upon stipulation of the parties, and the Court having fully and carefully reviewed and considered the record, the briefs of the parties and all matters pertinent thereto, and being fully advised in the premises, FINDS:

This is an appeal from a decision of the Secretary of Health and Human Services (Secretary) allowing disability insurance benefits to plaintiff Bruce Baker under Title II of the Social Security Act, 42 U.S.C. §§ 401–433, from May 27, 1986 instead of February 20, 1982 as plaintiff had sought. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

Plaintiff Baker, now 42 years old, has the equivalent of a high school diploma, some college credit, and about 2½ years of vocational education schooling. He currently resides at the home of his mother in Greybull, Wyoming. Baker applied for disability insurance benefits on May 29, 1986, alleging a disability from February 20, 1982 due to a lower back injury, neck injuries, and pain associated therewith. His claim was initially denied on July 16, 1986, Record at 81; the denial was affirmed on reconsideration August 6, 1986. Record at 92. An administrative hearing was held before an ALJ on March 19, 1987. Some two months later, the ALJ issued a decision finding plaintiff eligible for disability insur-

Lloyd E. Hartford, Billings, Mont., for plaintiff.

ance benefits commencing May 27, 1986. Baker appealed this decision to the Appeals Council, contending that the evidence showed that he was entitled to benefits several years prior to the date determined by the ALJ. On October 8, 1987, the Appeals Council denied plaintiff's request for review, essentially concluding that it found no basis for disturbing the ALJ's decision. This denial meant that the ALJ's decision represented final agency action by the Secretary. It is from this adverse decision that plaintiff now appeals.

Baker's back problems began in late 1969 when as a result of unloading chairs from a van he developed pain in his middle back which would radiate into his lower extremities. Record at 287. The pain continued and ultimately led him to undergo a successful laminectomy and posterior fusion at the L5–S1 level sometime between 1970 and 1971. Record at 41–42 and 77. Afterwards, he worked for various companies as an electronic mineral logging technician and eventually came to work for FMC Corp., in Rock Springs, Wyoming as a wellhead technician, installing and maintaining surface control valves for gas and oil wells. Record at 41–44.

In that capacity, he was transferred to Alaska. A short time later, on February 20, 1982, while working in the cellar of an oil rig at Prudhoe Bay, Alaska, plaintiff slipped on some ice and twisted his back as he grabbed a stationary structure with his right hand. Record at 121, 123, 182, and 288. This time the injury was to his lower back. For over a week thereafter, plaintiff did not seek medical help but instead returned to the Slope for another assignment on a different rig. Record at 121. Plaintiff sought help from Dr. Garner, an orthopedic surgeon in Anchorage. Plaintiff's claim is that he was disabled as of the date of his injury at Prudhoe Bay.

The record also shows that on March 30, 1984, plaintiff was admitted to a hospital in Helena, Montana as a result of neck injuries and a head laceration he sustained when the jeep he was riding in rolled over. Record at 174 and 186. Dr. Shepard's medical report shows that both plaintiff and the driver had been drinking prior to the accident. Record at 175. Several months later, plaintiff reinjured his neck when his vehicle was rear-ended by another vehicle as he was driving his vehicle into his driveway. Record at 186. *See also* Record at 286. A medical report shows that a fusion at C4–C5 was performed to relieve problems with the C5 nerve root. Record at 186.

In his decision, the ALJ found Baker's complaints prior to May 27, 1986 to be exaggerated. Record at 17–18. As of May 27, 1986, according to the ALJ, the range of sedentary work for which Baker would qualify was "significantly compromised" due to his inability to maintain any posture for a prolonged period of time and to lift and carry any significant weight. Record at 18. Applying the agency's rules and regulations, the ALJ concluded that plaintiff was disabled as of May 27, 1986 and entitled to disability insurance benefits from that date. Record at 18–19.

The ALJ's determination will be upheld only if it is supported by substantial evidence. *See Tillery v. Schweiker,* 713 F.2d 601, 603 (10th Cir.1983). Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion' "; however, "[i]t must be 'more than a mere scintilla.' " *Broadbent v. Harris,* 698 F.2d 407, 414 (10th Cir.1983) (quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)). Application of this standard requires that the reviewing court "meticulously examine the record." *Id.* Evidence may not be viewed with any eye toward substituting a court's discretion for that of the agency. *See, e.g., Talbot v. Heckler,* 814 F.2d 1456, 1461 (10th Cir.1987) and *Cagle v. Califano,* 638 F.2d 219, 220 (10th Cir.1981). For reasons explained below, this Court's opinion is not in total accord with the ALJ's decision.

The term "disability" has been defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expect-

ed to last for a continuous period of not less than 12 months...." 42 U.S.C. § 423(d)(1)(A) (1982). Refining further upon this definition is the following explanation:

[A]n individual ... shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work....

42 U.S.C. § 423(d)(2)(A).

Agency regulations promulgated pursuant to these statutes set forth specific prerequisites which must exist before one is entitled to receive disability insurance benefits. *See* 20 C.F.R. § 404.320(b) (1988). Before a claimant is determined to be disabled, he must have a severe impairment which renders him unable to perform his previous work or any other substantial gainful activity. 20 C.F.R. § 404.1505(a). The Secretary must factor in a claimant's age, education, work experience, and residual functional capacity (RFC) into his determination of whether the claimant is able to work. *Id.*

To aid in the disability determination, there is a five-step sequential evaluation process wherein a finding of disabled or not disabled at any step terminates further inquiry under subsequent steps. *See* 20 C.F.R. § 404.1520. At step one, the inquiry is whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Only if he is not does the decision-maker go to step two; otherwise the claimant is found not disabled regardless of medical condition, age, education, and work experience. *Id.* At step two, the relevant inquiry is whether the claimant has a severe impairment; namely, "any impairment or combination of impairments which significantly limits ... physical or mental ability to do basic work activities...." 20 C.F.R. § 404.1520(c). Vocational criteria such as age, education, and work experience are not part of this determination. *Id.* A claimant will be found to be not disabled if he is unable to show that his impairments interfere in more than a minimal way with his ability to do basic work as defined in § 404.1521. *Id.*

If a claimant overcomes the burden and shows that his impairments significantly affect his ability to do basic work, step three takes the decision-maker to Appendix 1 for a consideration of whether the claimant's impairments equal any of the listed impairments adjudged to be presumptively disabling. 20 C.F.R. § 404.1520(d). *See also* Part 404, Subpt. P, App. 1. Here again, vocational factors are not considered. An inability to make this requisite connection leads to step four in the evaluation where the inquiry turns to whether the claimant's impairments, presumably severe by this stage, prevent him from doing past relevant work. 20 C.F.R. § 404.1520(e). The decision-maker considers the physical and mental demands of the claimant's past work and compares this with his RFC. *Id.*

If after this process the conclusion is that the claimant will not be able to perform his past work, attention is focused on step five—the final step. Essentially this step involves an inquiry into whether, given the claimant's age, education, past work experience, and RFC, he is able to do any other type of work. 20 C.F.R. § 404.1520(f). The Secretary bears the burden of demonstrating an ability to do other work. *See Talbot,* 814 F.2d at 1460. To facilitate this determination are so-called "grids" which factor in the vocational criteria recited above, comparing them with the claimant's RFC and relating them to ability to perform other work in the national economy. *See* 20 C.F.R. Part 404, Subpt. P, App. 2. These Medical–Vocational Guidelines, approved by the Supreme Court in *Heckler v. Campbell,* 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983), allow the Secretary to take administrative notice of the number of jobs in the national economy at the sedentary, light, medium,

heavy, and very heavy functional levels. *See Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir.1984).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since February 20, 1982. In his next finding, namely that plaintiff's impairment or combination of impairments is not listed in, or medically equal to any Appendix 1 impairments, the ALJ implicitly determined that plaintiff had shown that his impairments significantly affected his work, justifying an analysis under step three. This progression led the ALJ to the step four determination of whether plaintiff could perform past relevant work despite his impairments. The ALJ found that plaintiff indeed was unable to perform such work. This finding brought the ALJ to the fifth and final step. Taking into consideration plaintiff's age, education, and work experience, together with his RFC, the ALJ declared that as of May 27, 1986, the range of sedentary jobs for which plaintiff could be qualified had been reduced significantly. Record at 18. The ALJ concluded that as of May 27, 1986, plaintiff's condition could be expected to continue for more than twelve consecutive months, rendering him disabled within the meaning of the regulations.

Citing to the report of plaintiff's treating physician in Anchorage, Dr. Garner, the ALJ repeated the doctor's recommendation that plaintiff be restricted to desk work and that he lift no more than 25 pounds. A review of the progressive evaluations of Baker made by Dr. Garner from March 3, 1982 to the surgeon's authorization on May 27, 1982 that plaintiff may return to modified work are indicative of Baker's progress following the Prudhoe Bay mishap. Dr. Garner's notes show that plaintiff complained of aching pain in his lower back and down into the left buttock. Record at 137. A week later, Dr. Garner placed plaintiff on a regimen of lapswimming three times a week for half an hour. Record at 133. Monthly progress reports from the Alaska Treatment Center where plaintiff was going for swimming therapy indicate that plaintiff was an excellent swimmer, swimming between 30 and 40 laps per session before he was discharged in May 1982 for failing to meet appointments. Record at 162–164. Plaintiff indicated to the doctor that a supervisory position with his employer would be reasonable if such a position could be found. *Id. See also* Record at 123.

When plaintiff found he could not return to his past work, he went to Sheridan, Wyoming and saw his other treating physician, Dr. Nickerson. The two discussed the results of Baker's CT scan. The CT scan showed a mild central bulging of the disc at the L4 position, a condition the doctor referred to as "a probably normal finding," and inconsistent with plaintiff's claimed pain primarily on the left. Record at 147. In a letter to a vocational rehabilitation therapist dated July 2, 1982, Dr. Nickerson made the following observations regarding plaintiff's condition:

I feel that he can proceed with Vocational Rehabilitation evaluation and training. His restrictions would be no repeated stooping, lifting, or bending. He should not have to work over his head for prolonged periods. He can certainly tolerate standing and walking about but should not be required to carry or lift loads over approximately 40 pounds.

Record at 146.

Dr. Nickerson's office notes of June 30, 1982 show that when faced with the possibility of another surgery if a myelogram showed a nerve root compression, plaintiff indicated he would rather pursue a different trade than have another operation. Record at 147. In a subsequent follow-up visit at the request of his lawyer and an insurance carrier, plaintiff returned to Dr. Nickerson on June 1, 1983 and related that he had some aching and stiffness in the lower back and hips with occasional numbness or discomfort into the lateral left and right thighs. Record at 168. He further indicated that he had begun taking college classes and was tolerating the sitting without particular discomfort. *Id.* The doctor's notes show that plaintiff was leaning in the direction of vocational retraining or college. *Id.*

Plaintiff indeed opted for vocational retraining in Helena, Montana. While there, the record shows that on March 16, 1984, plaintiff was seen by Dr. Canty at the request of an insurance company representative. Record at 172. Dr. Canty, in a letter to the representative, essentially communicated that it was useless for plaintiff to continue his retraining in light of a probable progressive neurologic deficit on the left L5 nerve root. *Id.* To the contrary were the opinions of Dr. Sears, an orthopedic surgeon, and Dr. Hood, a neurologist, who examined plaintiff on February 6, 1985. *See* Record at 286–295. These surgeons found plaintiff to have made an excellent recovery from his lower back and neck surgeries and, with physical therapy, they felt his neck stiffness would resolve itself. Record at 294. Unlike Dr. Canty, Drs. Sears and Hood felt it important that Baker continue his schooling. *Id.* Plaintiff persevered and in November 1985 successfully completed training in industrial electronics and consumer products servicing.

Plaintiff testified before the ALJ that after his retraining, he worked for Dome Communications in Sheridan, Wyoming until May 27, 1986 as a service technician for two-way communications systems, working on two-way FM radios. Record at 39. This work lasted for almost three months, eventually becoming too strenuous to bear. Record at 40. In an effort at alleviating the pain, plaintiff began wearing a plastic brace in 1986. Record at 53. Based upon this record and plaintiff's appearance and testimony, the ALJ concluded that plaintiff was disabled within the meaning of the regulations as of May 27, 1986.

■ Plaintiff argues that the ALJ failed to adhere to the Department's own regulations for the period immediately prior to May 27, 1986. On this point, such argument is not altogether without merit. The detailed account of plaintiff's history as recited by the Court paints the picture of an individual whose condition despite an arsenal of medical knowledge progressively deteriorated and today continues to do so. Particularly indicative of the gravity of his condition is the report of Dr. See, the physician consulted by the Social Security Administration. Record at 150–153.

■ It is clear that when in a particular case, the Secretary's sequential analysis reaches step five, use of the grids requires that there be a tight nexus between the factors considered and the specific rule. *See Eggleston v. Bowen,* 851 F.2d 1244, 1247 (10th Cir.1988). Where such a nexus is notably absent, a finding of no disability based upon the grids is inappropriate. At this step, the Secretary's burden is to show that a claimant is "able to perform the *full range* of such work on a daily basis in order to be placed in a particular RFC category." *Channel,* 747 F.2d at 579–580 (emphasis in original).

Conspicuously lacking in that portion of the ALJ's decision respecting Baker's ability just prior to May 27, 1986, is such a finding. The ALJ found that notwithstanding plaintiff's short period of employment in 1986, he had not been engaged in substantial gainful activity since February 20, 1982. Record at 16. He then proceeded to make the following finding:

> Prior to May 27, 1986, claimant had the residual functional capacity to perform a *limited range* of light work....

Record at 18 (emphasis added). With this finding, the ALJ failed to meet the burden explained in *Channel.* The ALJ never found that plaintiff was able to perform a *full range* of light work on a daily basis prior to May 27, 1986. In fact, Dr. See indicates that while Baker might be able to work a full eight hour day on some days, there would be some days when he would be unable to work at all. Record at 156. At this stage, the Secretary could not seriously advance the proposition that a limited range of light work infers a full range of sedentary work, for the finding must be expressly made, not surreptitiously shrouded in semantics.

■ While this alone is sufficient ground for reversal, the Court notes that apart from the evaluations of Drs. Garner and Nickerson referred to above, there is no medical evidence of plaintiff's work abilities from 1982 through 1985 which indicate that during those periods plaintiff's condi-

tion had remained nearly what it was at the time these orthopedic surgeons made their recommendations. These surgeons offered their medical opinions depicting Baker as capable of doing certain types of work as of mid–1982. The record shows that following the Prudhoe Bay accident, Baker's condition was not disabling for a consecutive twelve month period. However, the record is silent as to how rapidly Baker's condition deteriorated. As for the RFC forms filled out by consulting physicians, they are of "suspect reliability" when, as here, boxes are simply checked off without "thorough written reports or persuasive testimony" explaining the basis for their conclusions. *Frey v. Bowen,* 816 F.2d 508, 515 (10th Cir.1987).

Although the final decision of the Secretary as it pertains to the period commencing May 27, 1986 is supported by substantial evidence in the record, the same cannot be said for the decision as it pertains to the period prior to May 27, 1986, thus entitling plaintiff to retroactive benefits. By statute, the maximum period of retroactivity is one year prior to the date of filing the application. *See* 42 U.S.C. § 423(b) (1982). The fact that a one-year period of retroactivity overlaps plaintiff's time in a vocational school presents no problem in this factual setting. *Cf. Markham v. Califano,* 601 F.2d 533, 534 (10th Cir.1979). The Court concludes that plaintiff is entitled to receive the maximum retroactive benefits provided by law.[1]

It is the opinion of this Court that a remand to the Secretary for a further hearing as to plaintiff's disability status for the period encompassed by 42 U.S.C. § 423(b) would serve no useful purpose as it would unnecessarily subject the plaintiff to additional delays in contravention of congressional intent. *See, e.g., Lewin v. Schweiker,* 654 F.2d 631, 635 and n. 9 (9th Cir.1981) and *Robertson v. Heckler,* 603 F.Supp. 147, 150 (N.D.Cal.1985).

It is within this Court's discretion to reverse the decision of the Secretary and to direct the Secretary to award the appropriate benefits. 42 U.S.C. § 405(g). *See also*

*Winans v. Bowen,* 853 F.2d 643, 647 (9th Cir.1987); *Dixon v. Heckler,* 811 F.2d 506, 511 (10th Cir.1987); *Fulton v. Heckler,* 760 F.2d 1052, 1056–1057 (10th Cir.1985); *Podedworny v. Harris,* 745 F.2d 210, 221 (3rd Cir.1984); and *Broadbent,* 698 F.2d at 414.

NOW, THEREFORE, IT IS

ORDERED that the decision of the Secretary insofar as it finds plaintiff to be disabled and entitled to disability insurance benefits from May 27, 1986, be, and the same is, hereby affirmed; it is

FURTHER ORDERED that in all other respects, except as provided below, the decision of the Secretary be, and the same is, hereby affirmed; it is

FURTHER ORDERED that the decision of the Secretary insofar as it finds plaintiff to be not disabled from May 29, 1985 to May 26, 1986, be, and the same is, hereby reversed; it is

FURTHER ORDERED that the matter be, and the same is, hereby remanded to the Secretary with directions to promptly award disability insurance benefits retroactively to May 29, 1985—as provided for under 42 U.S.C. § 423(b)—consistent with this Order.

---

1. To be entitled to receive benefits as of May 29, 1985, the maximum retroactive period provided for under § 423(b), the Court finds plaintiff to have been disabled as of November 29, 1984. This takes into account the five month waiting period requirement of § 423(c)(2).