**Bruce BAKER, Social Security No. 520–48–7925, Plaintiff,**

v.

**Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant.**

**No. C87–413–K.**

United States District Court, D. Wyoming.

March 3, 1989.

Lloyd E. Hartford, Billings, Mont., for plaintiff.

Carol S. Prescott, Asst. Regional Counsel, U.S. Dept. of Health and Human Services, Denver, Colo., and Toshiro Suyematsu, Asst. U.S. Atty., D. Wyo., Cheyenne, Wyo., for defendant.

## ORDER ALLOWING ATTORNEY'S FEES

KERR, District Judge.

The above-entitled matter having come on regularly for hearing before the Court on plaintiff's motion for EAJA fees and costs; plaintiff appearing by and through his attorney, Lloyd E. Hartford; defendant appearing by and through his attorneys, Carol S. Prescott, Assistant Regional Counsel, United States Department of Health and Human Services, and Toshiro Suyematsu, Assistant United States Attorney for the District of Wyoming; and the Court having heard the arguments of counsel, and having fully and carefully reviewed and considered the motion and brief filed therewith and all matters pertinent thereto, and being fully advised in the premises, FINDS:

Recently, this Court affirmed in part, reversed in part, and remanded plaintiff Baker's case to the Secretary of Health and Human Services (Secretary) for prompt dis-

pensation of retroactive disability insurance (DI) benefits. *See Baker v. Bowen,* 697 F.Supp. 430 (D.Wyo.1988). Plaintiff's attorney now comes before the Court seeking attorney's fees and costs pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412 (1982 & Supp. III 1985).

■ Since its enactment in 1980 as a three-year experiment, the EAJA's principal purpose has been "to ensure that certain individuals, partnerships, corporations, businesses, associations, or other organizations will not be deterred from seeking review of, or defending against, unjustified governmental action because of the expense involved in securing the vindication of their rights." H.R.Rep. No. 120, 99th Cong., 1st Sess., pt. 1, at 4, *reprinted in* 1985 U.S.Code Cong. & Admin.News 132, 132–133. Looked at in a different light, recovery of attorney's fees and certain costs from the coffers of the federal government was seen as a means of discouraging the United States from pursuing unreasonable litigating positions. However, it was not the purpose of Congress that the EAJA be used "to subsidize all contingent-fee litigation with the United States." *Pierce v. Underwood,* — U.S. ——, 108 S.Ct. 2541, 2555, 101 L.Ed.2d 490 (1988). The EAJA's application is far-reaching, encompassing any actions seeking review of administrative proceedings. *See Hamilton v. Northeast Kansas Health Systems Agency, Inc.,* 701 F.2d 860, 863 (10th Cir.1983).

For present purposes, the relevant EAJA passage reads as follows:

Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action (other than cases sounding in tort), including proceedings for review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that

the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (1982 & Supp. III 1985). Thus, eligibility for an EAJA award turns upon a finding that the movant is a prevailing party and that the position advanced by the United States in court was not substantially justified.

■ Any party "who succeeds on any significant issue in litigation which achieves some of the benefits sought in bringing the suit ..." is considered a prevailing party. *Battle v. Anderson,* 614 F.2d 251, 258 (10th Cir.1980). In the instant case, the Secretary's position led to a finding that Baker was entitled to DI benefits from May 27, 1986. In this Court, Baker successfully challenged that finding, contending that his disability began earlier. Although Baker was receiving DI benefits, this Court set the eligibility date at May 29, 1985, allowing for the maximum retroactive benefits provided under law. *See* 42 U.S.C. § 423(b) (1982). One cannot dispute that this ruling translated into anything but a victory for Baker on a significant issue he has raised ever since his case was heard at the administrative level. His status, therefore, as a prevailing party is a foregone conclusion.

■ What remains is a determination of whether the Secretary's stand on the issue before this Court on appeal was "substantially justified." Despite attempts to extend a more rigorous meaning to this term, it is now settled that an evaluation of whether the posture taken by the Secretary was "substantially justified" is to be judged under a reasonableness standard; that is, a position will be considered "substantially justified" if it is "justified to a degree that could satisfy a reasonable person." [1] *Pierce,* 108 S.Ct. at 2550. This Court found that the conclusion of the Secretary finding Baker ineligible for DI benefits from the period May 29, 1985 to May

---

1. Such a standard embodies the "reasonable basis both in law and fact" standard adopted by the majority of Courts of Appeals. *Pierce,* 108 S.Ct. at 2550 (citing cases). Notably, Justices Brennan, Marshall, and Blackmun construe the "substantially justified" language of the statute as placing a heightened burden on the Government beyond the comparatively light reasonable basis standard. *Id.* at 2555 n. 1.

26, 1986 was not supported by substantial evidence.

Lack of substantial evidence, though, does not a fortiori mean that the Secretary's position was not "substantially justified." *See Hadden v. Bowen,* 851 F.2d 1266, 1269 (10th Cir.1988). Furthermore, the fact that this Court or any other court may disagree with the Secretary far from establishes that the Government's position was not substantially justified. *See Pierce,* 108 S.Ct. at 2552. What matters is whether a reasonable person would agree with the Secretary's stance. Given the thorough review of the record which was undertaken here, which clearly showed an individual plagued by a progressively degenerative condition even prior to the eligibility date set by the Secretary, a reasonable person would be hard-pressed to find Baker not disabled under the applicable regulations prior to May 27, 1986. As the Court indicated in *Baker,* the record contained no documentation as to the rate of Baker's deterioration nor did it contain any medical evidence which would justify the Secretary's finding that Baker was able to engage in substantial gainful employment prior to May 27, 1986. *See Baker,* 697 F.Supp. at 435–436. As this Court sees it, a reasonable person would find the Secretary's persistence in maintaining his position entirely unreasonable and substantially unjustified.

The Court now proceeds to the merits of the EAJA application for attorney's fees and costs. Plaintiff's attorney has submitted an amended itemization wherein he seeks compensation for some 39.1 hours spent in this Court and additional costs amounting to $226.31. At the outset, the Court is somewhat constrained in its assessment of attorney's fees by statutory language expressly directing that such fees "shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee...." § 2412(d)(2)(A)(ii). Counsel urges upon the Court that special factors exist which justi-fy a rate of $100 per hour. Factors which counsel cites as supportive of this rate are (1) his success in obtaining retroactive benefits; (2) his vast knowledge and expertise in disability matters; (3) the undesirable nature of social security disability claims; and (4) his high percentage of contingency fee arrangements, including in this case an agreement for 25% of past-due disability benefits plus costs. Moreover, counsel presses, the cost of living has increased substantially since the EAJA's enactment.

A careful reading of § 2412(d)(2)(A)(ii) reveals that a rise in the cost of living is a consideration apart from the presence of any special factors. In other words, judged in a vacuum, Congress did not intend that a change in the cost of living be regarded as a "special factor" within the meaning of the provision. Accordingly, this Court initially turns its attention toward a consideration of whether special factors are indeed present in the case at bar, a task substantially lightened by the Supreme Court's pronouncement in *Pierce.*

With *Pierce,* the Supreme Court cleared the waters somewhat, removing some of the disparity between courts as to what constitutes "special factors." After some reflection, one must necessarily conclude that "special factors" cannot be present in all circumstances; for to hold otherwise would effectively render the statute meaningless, relegating it to a stature of "nothing more than advisory despite Congress' expressed intent to permit higher awards only in rare cases." *Pierce,* 108 S.Ct. at 2557 (Brennan, J., concurring in part and concurring in the judgment). All of the factors which the district court and later the Ninth Circuit labeled as "special factors" were rejected outright by the Supreme Court. *Id.* at 2554. These factors, enumerated in the Ninth Circuit's decision, included "the novelty and difficulty of the issues, the contingent nature of the fee, the undesirability of the case, the expertise of counsel, the amount involved and the results obtained, and the customary fees and awards in other cases." *Underwood v. Pierce,* 761 F.2d 1342, 1347 (9th Cir.1985).

The Supreme Court found these factors to be of "broad and general application ... [and] little more than routine reasons why market rates are what they are." *Pierce,* 108 S.Ct. at 2554. Thus, they were beyond the reach of the exception. *Id.* As the factors plaintiff's attorney relies upon are the very ones which the Supreme Court rejected as "special factors," the Court need not address the matter further.

■■■ The elimination of these factors leaves the one "special factor" recognized in 2412(d)(2)(A)(ii) as the "limited availability of qualified attorneys for the proceedings involved." Recognizing this exception alone, the Supreme Court elaborated as to its meaning:

> [T]he 'special factor' formulation suggests Congress thought that $75 an hour was generally quite enough public reimbursement for lawyers' fees, whatever the local or national market might be. If that is to be so, the exception for 'limited availability of qualified attorneys for the proceedings involved' must refer to attorneys 'qualified for the proceedings' in some specialized sense, rather than just in their general legal competence. We think it refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation. Examples of the former would be an identifiable practice specialty such as patent law, or knowledge of foreign law or language. Where such qualifications are necessary and can be obtained only at rates in excess of the $75 cap, reimbursement above that limit is allowed.

*Id.* Based upon attorney Hartford's prior employment with the Social Security Administration, the Court concludes that he falls within this exception, demonstrating a specialty in social security cases. However, for reasons which will be apparent,

an enhanced award for this exception is inappropriate.

An alternative justification for fee enhancement expressed in § 2412(d)(2)(A)(ii) and one proffered by attorney Hartford is an increase in the cost of living. Counsel's method of showing a cost-of-living increase is by resort to the Consumer Price Index (CPI). From October 1, 1981, the effective date of the EAJA, through June 1988, counsel represents that the CPI increased from 279.9 to 353.5—an increase of 26.3%. The Secretary does not question the accuracy of this CPI increase. Thus, attorney Hartford calculates that the statutory cap should be increased to approximately $94.50 per hour to reflect this change. In total, counsel seeks compensation at the rate of $100 per hour.

■■■ This Court is persuaded by the reasoning which finds the baseline year for calculating cost-of-living adjustments to the $75 rate as 1981, not 1985 when the EAJA's sunset provision was removed.[2] *See, e.g., Wilkett v. Interstate Commerce Commission,* 844 F.2d 867, 874 (D.C.Cir. 1988), *reh'g denied,* 857 F.2d 793 (D.C.Cir. 1983); *Garcia v. Schweiker,* 829 F.2d 396, 401 (3rd Cir.1987); and *Ford v. Bowen,* 663 F.Supp. 220, 221–222 (N.D.Ill.1987). One of the most authoritative gauges of the cost of living is the CPI, an economic barometer which a majority of the Courts of Appeals has utilized in adjusting the $75 per hour rate for changes in the cost of living. *See, e.g., Ramon–Sepulveda v. Immigration and Naturalization Service,* 863 F.2d 1458, 1463 (9th Cir.1988); *Kelly v. Bowen,* 862 F.2d 1333, 1336 (8th Cir.1988); *Wilkett,* 844 F.2d at 875; *Trichilo v. Secretary of Health and Human Services,* 823 F.2d 702, 704 (2nd Cir.1987) (*Trichilo I*), *aff'd and extended,* 832 F.2d 743 (2nd Cir. 1987) (*Trichilo II*); *Allen v. Bowen,* 821 F.2d 963, 967 (3rd Cir.1987); *Sierra Club v. Secretary of Army,* 820 F.2d 513, 521 (1st Cir.1987); and *Continental Web Press, Inc. v. National Labor Relations Board,* 767 F.2d 321, 323–324 (7th Cir.1985). This

---

**2.** The Secretary notes that the Tenth Circuit heard oral arguments on this very issue January 19, 1989 in *Headlee v. Bowen,* No. 87–2721 and asks the Court to defer ruling that 1981 is the baseline year until the outcome of that case. In light of the available precedent, the Court declines this request.

district expressly recognizes and permits the use of the CPI as a means of determining the cost-of-living adjustment to the statutory cap.

▮▮▮▮▮ Having said this, there is left the matter of calculating the proper amount of the award using the itemized statements submitted.[3] Fees are allowable to the extent that they represent "all the hours reasonably expended in the litigation...." *Jordan v. Heckler*, 744 F.2d 1397, 1402 (10th Cir.1984), *cert. denied*, — U.S. ——, 108 S.Ct. 287, 98 L.Ed.2d 247 (1987). The circumstances surrounding the preparation of the itemization lead one to wonder whether these hours were tabulated as they were incurred or whether they are a product of reflective hindsight. Moreover, 3.80 hours are attributed to proofreading of a 29-page brief and 1.50 hours are attributed to proofreading another brief. Proofreading is in the nature of a clerical function and thus not considered in the calculation of hours reasonably spent in litigation before the Court. Additionally, plaintiff's attorney bills 14.60 hours as the time spent in legal research and preparation of his appellate brief. This seems somewhat excessive for someone regarded as having specialized expertise in the field of social security disability cases.[4] The Court finds that an upward adjustment in the $75 rate is warranted, however, due to the increase in the cost of living and concludes that $95 per hour, representing a 26.3% increase, would be reasonable. In light of this, no further adjustment for special factors is necessary. Reviewing the amended itemization, compensation for 21.2 hours is appropriate.

▮▮▮ As regards costs, our circuit, unlike others, strictly construes the statutory allowances. *See* 28 U.S.C. § 1920 (1982).

Consequently, costs for travel expenses and postage are not recognized. *See Weakley v. Bowen*, 803 F.2d 575, 580 (10th Cir.1986). Accordingly, the claim for $7.71 for postage must be denied.

NOW, THEREFORE, IT IS ORDERED that the United States pay plaintiff's attorney's fees and costs pursuant to the EAJA in the amount of $2,232.60.

---

**3.** Initially, attorney Hartford submitted an itemization reflecting 35.6 hours before the federal court at $100 per hour plus costs totaling $1,757.75. After strenuous objections from the Secretary, Hartford conceded having mistakenly included hours relating to a workman's compensation claim and even relating to a different client named Baker. The Court removed these items, 5.8 hours worth as well as the great majority of his expenses since they represented costs incurred at the administrative level. Hart-

ford then filed an amended itemization which not only properly was updated but also included one billing which had not been a part of the initial itemization, resulting in 39.1 hours being claimed before the federal court and expenses before this Court totaling $226.31.

**4.** If some of this time is attributable to a law clerk or paralegal, certainly a $100 per hour fee exceeds the bounds of reasonableness.