962 F.2d 17
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Doris RINGER, Plaintiff-Appellant,
v.
Louis W. SULLIVAN, Secretary of the Department of Health &
Human Services, Defendant-Appellee.
 No. 91-3292.
 United States Court of Appeals, Tenth Circuit.
 May 5, 1992.
 
 Before LOGAN, BARRETT, and EBEL, Circuit Judges.
 ORDER AND JUDGMENT*
 BARRETT, Senior Circuit Judge.
 
 
 1
 Plaintiff Doris Ringer was awarded Social Security disability insurance benefits from December 27, 1987, through December 31, 1988. She filed this action in the district court, seeking an order that the Secretary's determination of the onset date of her disability was incorrect and that she was entitled to benefits beginning April 27, 1983. The district court denied her request, and she appeals.[1] At issue is whether the Secretary for Health and Human Services' determination of onset date is supported by substantial evidence. We find that it is not and grant plaintiff's request for benefits as of April 27, 1983.
 
 
 2
 To qualify for disability benefits, a claimant must establish that she has a medically determinable physical or mental condition which prevents her from engaging in substantial gainful activity for a period of at least twelve months. 42 U.S.C. § 423(d)(1)(A). The Secretary has established a five-step sequential evaluation process for determining such disability. See Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir.1988) (describing the five-step sequence); 20 C.F.R. § 404.1520. The five-step sequence provides that the claimant (a) is not gainfully employed, (b) has a severe impairment, (c) has an impairment which meets or equals an impairment presumed by the Secretary to preclude substantial gainful activity, listed in Appendix 1 to the Social Security Regulations, (d) has an impairment which prevents her from engaging in her past employment, and (e) has an impairment which prevents her from engaging in any other work, considering her age, education, and work experience. Id. The claimant bears the burden of proving that she is disabled, 42 U.S.C. § 423(d)(5)(A), that is, that she is not presently working in any employment, has a severe impairment or has an impaired condition which meets or equals one of those listed in the regulations, and is not able to return to her past work. See, e.g., Channel v. Heckler, 747 F.2d 577, 579 (10th Cir.1984). The Secretary then bears the burden of proving the final step in the application analysis, that a claimant has the residual functional capacity to engage in gainful employment appropriate to her age, education, and work experience, even if it is not the work the claimant has performed in the past, and that such job exists in the national economy. Flint v. Sullivan, 951 F.2d 264, 267 (10th Cir.1991); Hargis v. Sullivan, 945 F.2d 1482, 1489 (10th Cir.1991); Channel, 747 F.2d at 579.
 
 
 3
 Plaintiff had a history of health problems, including chronic sporadic back pain following removal of a disc in 1980, chronic severe pulmonary problems, and chronic depression. She claimed that this combination of problems rendered her unable to work from April 27, 1983, through December 31, 1988. The Appeals Council made the following factual findings:
 
 
 4
 1. The claimant met the special earnings requirements of the Act on April 27, 1983, the date that the claimant stated she became unable to work and continued to meet them through December 31, 1988, but not thereafter.
 
 
 5
 2. The claimant has not engaged in substantial gainful activity since April 27, 1983.
 
 
 6
 3. The claimant has the following severe impairments: bronchial asthma, hypertension with congestive heart failure by history, status post laminectomy, mild depression.
 
 
 7
 4. The claimant's pulmonary disorder is of severity to equal Section 3.02 A and B of Appendix 1 to Subpart P of the Regulations No. 4 as of December 29, 1987, but not prior thereto.
 
 
 8
 5. Accordingly the claimant was under a "disability" commencing December 29, 1987, but not prior thereto.
 
 
 9
 6. The statements regarding the severity of the claimant's condition and the restrictions imposed by her impairments are not supported by the clinical findings to the degree alleged prior to December 29, 1987.
 
 
 10
 7. The claimant ha[d] the residual functional capacity prior to December 29, 1987, to perform light to medium exertional work not involving exposure to pulmonary irritants.
 
 
 11
 8. The claimant's past relevant work as a sheet metal assembly worker did not require the above noted limitations.
 
 
 12
 9. The claimant's impairments d[id] not prevent the performance of the past relevant work.
 
 
 13
 10. The claimant, therefore, was not under a "disability," as defined in the Social Security Act, at any time prior to December 29, 1987.
 
 
 14
 Plaintiff/Appellant's Appendix (hereinafter designated as "R.") at 30-31. Plaintiff challenges the Appeals Council's determination of the onset of her period of disability, claiming that the Secretary did not carry his burden of proof that, despite her combination of impairments, she could have pursued gainful employment from April 27, 1983, to December 29, 1987.
 
 
 15
 This court reviews the Secretary's decision [denying benefits] to determine only whether his findings are supported by substantial evidence and whether the Secretary applied correct legal standards when making his decision. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. We cannot reweigh the evidence or substitute our judgment for that of the Secretary.
 
 
 16
 Hargis, 945 F.2d at 1486 (citations omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (defining the standard for "substantial evidence"); 42 U.S.C. § 405(g). We "review the record as a whole, and 'the substantiality of the evidence must take into account whatever in the record fairly detracts from its weight.' " Talbot v. Heckler, 814 F.2d 1456, 1461 (10th Cir.1987) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)). Review of the record reveals that several of the findings of the Appeals Council, set forth below, are not supported by substantial evidence.
 
 
 17
 A. Severity of plaintiff's condition, considering her combination of impairments.
 
 
 18
 The Appeals Council found: "3. The claimant has the following severe impairments: bronchial asthma, hypertension with congestive heart failure by history, status post laminectomy, mild depression.";[2] and "6. The statements regarding the severity of the claimant's condition and the restrictions imposed by her impairments are not supported by the clinical findings to the degree alleged prior to December 29, 1987." R. at 30.
 
 
 19
 It is clear from the evidence in the record that plaintiff's back problems and resultant pain were not severe enough, in and of themselves, to be totally disabling; nor was her pulmonary impairment; nor was her depression. We do not have to "reweigh" the evidence, however, to conclude from the record that these difficulties combined in plaintiff to cause severe dysfunction in her life. See, e.g.:
 
 
 20
 This is an individual whose emotional reaction, that is her depression, was to a back injury and her failure to improve. The acceptance of being disabled was quite difficult for her. This in conjunction with her ... pulmonary dysfunction ... has resulted in rather serious continuing problems with depression.
 
 
 21
 ... It is my opinion that [plaintiff's] depressive syndrome is related to her inability to adjust to unacceptable physical limitations that prevent her from returning to work. It is my further opinion that if she were able to return to work her depression would be a more treatable condition and would not in and of itself be disabling.
 
 
 22
 R. at 166 (8/26/85, letter from treating psychotherapist).
 
 
 23
 We also note the same practitioner's observation of March 24, 1986, describing the changing nature of her treatment. Before December 1985, the thrust of treatment for plaintiff was rehabilitation. After that time, her treatment shifted to helping her accept her "likely permanent disability." R. at 179. This observation is consistent with the contemporaneous treating physicians' clinical notes detailing suggestions for possible vocational rehabilitation during the period 1983-85, which contrast with their later retrospective analysis of that period concluding that such rehabilitation had not been possible and that plaintiff had indeed been disabled during the entire period beginning in April 1983. See, e.g., R. at 163-65.
 
 
 24
 Plaintiff's treating psychotherapist opined that plaintiff suffered from disabling depression caused by her inability to work, in turn caused by her pulmonary and back problems. The Appeals Council wrote that this opinion was not supported by any "mental status examination, psychological testing, or even clinical interview data." R. at 29. Indeed, no raw clinical data of psychological testing was included in the record.[3] We note, however, that three of her treating physicians during the pertinent time period diagnosed plaintiff as suffering from chronic depression which interfered with her activities. See R. at 124-26 (her treating physician from 1980-83); R. at 146, 155 (her treating physician from 1983-88); R. at 178-79, 184-85, 198-99, 222 (her psychotherapist from 1983-88). The consistency of this diagnosis, supported by specific observations of her behavior, e.g., R. at 184-85, 198-99, from her treating physicians during the period 1983-87, coupled with a complete lack of contradictory evidence, in the form of empirical testing, contemporaneous reports, or professional opinions, renders hollow the Appeals Council's denial of the debilitating severity of her depressed condition.
 
 
 25
 The opinion of an applicant's treating physician may be rejected if the Secretary gives specific, legitimate reasons for doing so. Eggleston v. Bowen, 851 F.2d 1244, 1246-47 (10th Cir.1988); Byron v. Heckler, 742 F.2d 1232, 1235 (10th Cir.1984). Here, the Secretary justifies his rejection of the contemporaneous opinions of plaintiff's three treating physicians by arguing that there was insufficient supportive objective data. Under the record before us, these "reasons" are insufficiently specific.
 
 
 26
 In addition, the Appeals Council stated that "[t]here are few convincing signs of depression, save for a possible guilty reaction to not working." R. at 29. Apparently the Appeals Council failed to note the testimony at the ALJ hearing by plaintiff and her daughter detailing the regular interference with plaintiff's functional abilities consistent with a diagnosis of chronic depression, R. at 56-76, and to note the repeated references to the debilitating effects of her depression from her treating physicians.
 
 
 27
 The interaction between plaintiff's physical pain and her depression is of critical importance in this case, and that interaction is not specifically addressed in the Appeals Council's findings. Plaintiff had a disc removed in 1980 and had recurring reaggrevations of that area of her back which caused pain severe enough to require hospitalization in April 1983. The prescribed treatment for her back pain was physical therapy, and plaintiff responded cooperatively by attending physical therapy sessions, by joining a "spa" and attending water therapy sessions, and by doing physical therapy exercises at home. This course of treatment was helpful to the extent she was able to pursue it. However, her chronic pulmonary impairments, which were consistently documented to have been present throughout the period in question, often interfered with her ability to pursue the necessary exercises for her back.
 
 
 28
 We hold that plaintiff's pulmonary impairment, documented by her treating physician during the period in question, in combination with the debilitating effects of her depression, documented by contemporaneous reports from her treating physicians and her psychotherapist, together with her status of post-laminectomy are sufficient to provide objective support for plaintiff's subjective reports of pain. See Luna v. Bowen, 834 F.2d 161, 162 n. 2, 164 (10th Cir.1987) (only a loose nexus must exist between objectively proven impairment and subjectively alleged pain). We further hold that this combination of impairments, as documented in the record, could have been described as severe and could have been documented to have begun as of at least April 27, 1983.
 
 
 29
 B. Ability to do past work.
 
 
 30
 The Appeals Council found: "9. The claimant's impairments d[id] not prevent the performance of the past relevant work." R. at 31.
 
 
 31
 The record reflects that plaintiff's treating physicians consistently noted plaintiff's inability to return to her previous work as a sheet metal assembler at an aircraft manufacturing plant[4] and the necessity for her to have vocational retraining. See, e.g., R. at 149 (11/3/83, treating physician: "We discussed at some length whether or not she is ever going to return to the type of work she has been doing previously and I told her I doubted that she would be able to do this."); R. at 150 (1/4/84, treating physician: "I do not think she is going to be able to return to her original [occupation] which was in sheet metal work."); R. at 163 (8/17/83, treating physician: "She ... cannot perform heavy physical activity. In addition, she should avoid dusty environments or environments with fumes or toxins. ... I do not think she will be able to do activity requiring fair amounts of exertion."). Plaintiff testified before the ALJ that after she reinjured her back at work in April 1983, the physicians for her employer would not clear her to return to her previous work. R. at 54-55.
 
 
 32
 In contrast, there is no evidence in the record to support the Appeals Council's conclusion that plaintiff could return to her previous work as a sheet metal assembler. We hold that this finding was clearly erroneous.
 
 
 33
 C. Residual functional capacity to perform other work in the national economy.
 
 
 34
 The Appeals Council found: "7. The claimant has the residual functional capacity prior to December 29, 1987, to perform light to medium exertional work not involving exposure to pulmonary irritants." R. at 31.
 
 
 35
 Having noted that the record contains sufficient evidence to support plaintiff's claim that she was not gainfully employed during the relevant period and that she suffered from a combination of impairments which, taken together, produced a severe disabling condition which precluded returning to her previous employment, we examined the record for evidence sufficient to support the Secretary's burden of showing that during the relevant period of time plaintiff could engage in some other gainful employment in the national economy. We found only two references to this issue in the record.[5]
 
 
 36
 First, the physician treating plaintiff's pulmonary impairments opined on August 17, 1983, that, based only on her pulmonary functioning, she could "easily handle any sort of a job where a great deal of exercise was not involved such as secretarial type or clerical work." R. at 163. This report does not indicate that this physician considered or was asked to consider plaintiff's degree of impairment caused by the combination of her pulmonary impairments, her depression, and her back pain. Second, in connection with possible vocational rehabilitation training, on November 3, 1983, her treating physician seemed to imply that she could work in a less physically difficult job when he stated that training to be a medical laboratory technician would "be an excellent choice for her." R. at 149.[6]
 
 
 37
 Based on this record, the physician hired by the Social Security Administration to review the medical records opined that:
 
 
 38
 The exact date of onset is obviously arbitrary but since the only adequate pulmonary function test [her October 28, 1987, pulmonary function tests] is submitted in Exhibit 43 [results of that testing], I would give the claimant the date of onset to the combined period as of that date. Prior to that time a residual functional capacity for light work with avoidance of smoke, fumes, dust and etc, would be reasonable.
 
 
 39
 R. at 223.
 
 
 40
 20 C.F.R. § 404.1560 requires that residual functional capacity to work must be reviewed in conjunction with an applicant's age, education, and work experience. In April 1983, plaintiff was forty-eight years old. She had completed only tenth grade but had earned her GED. On March 24, 1986, her psychotherapist wrote that plaintiff "is actually poorly educated and she is quite simple and unsophisticated in her thinking." R. at 178. On August 7, 1985, a social security administration employee wrote on an interview form: "[She] has very poor memory." R. at 117. Her work experience included being a waitress "off and on over a period," being an "LPN" in a hospital from 1969-74,[7] and being a sheet metal assembler in the aircraft factory from 1974-83. R. at 186.
 
 
 41
 Nonexertional limitations such as pain must be taken into consideration in determining the applicant's residual functional capacity. Ray v. Bowen, 865 F.2d 222, 225 (10th Cir.1989). In addition to plaintiff's pain, discussed above, other evidence of nonexertional limitations was offered by plaintiff, and it contradicted a conclusion that she would be able to hold a job. Testimony from plaintiff and her daughter and information plaintiff provided in her application for social security benefits supported her claim that she had "good days" and "bad days;" That sometimes she could do some housework and go to the store; and that some days her family, who stopped by to check in on her three times a week, had to help her with her daily activities. R. at 56-58, 60-61, 118-19.
 
 
 42
 After reviewing the record, we agree with the Social Security Administration's reviewing physician that the choice of onset date for plaintiff's disability is "arbitrary." Proof of residual functional capacity to perform work in the national economy, however, is the Secretary's burden which must be sustained by "substantial" evidence, Hargis, 945 F.2d at 1486; by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Id.; by "more than a scintilla" of evidence, Flint, 951 F.2d at 266. Although there is some evidence in the record by which it is possible to infer that plaintiff might have been able to perform some gainful employment at some point before December 28, 1987, we are constrained to find that the Secretary did not sustain his burden of proof that claimant was able to participate in gainful activity from April 27, 1983, through December 29, 1987. See, e.g., Soc. Sec. Rul. 88-13 (detailing the kinds and variety of evidence which must be gathered and considered prior to arriving at a disability decision involving an applicant alleging disabling pain); Soc. Sec. Rul. 83-10 (listing specific requisites of sitting, standing, walking, and bending for the performance of "sedentary," "light," and "medium" work; explaining how an applicant's RFC is to be applied to the "grids" in the regulations; elaborating on the different levels of work described in the regulations). Absent a showing by the Secretary of plaintiff's actual residual functional capacity and the level of work of which she was capable as of a date certain, we conclude that the most appropriate onset date of plaintiff's disability under the facts of this case was April 27, 1983.
 
 
 43
 The judgment of the United States District Court for the District of Kansas is REVERSED, and plaintiff's motion to approve disability benefits dating from April 27, 1983, to December 31, 1988, is hereby GRANTED. We REMAND this matter for further proceedings consistent with this order.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument
 
 
 [2]
 We are at a loss to understand the inherent contradiction of including "mild depression" in a finding describing plaintiff's "severe impairments." To avoid belaboring the inconsistency, we will assume that the Appeals Council intended to render a formal finding that her depression was not "severe," see R. at 29 ("[T]he Council concludes that the claimant's depressive disorder does not constitute a severe mental impairment."), in our review of the record evidence of plaintiff's depression
 
 
 [3]
 The record contains no raw data, but does include several references to 1983 testing (Minnesota Multiphasic Personality Inventory (MMPI)) which formed the basis of plaintiff's treating physician's recommendation that she seek help from a psychotherapist. It also contains references to two MMPIs administered by her psychotherapist in 1983 and 1984 which formed the basis of his diagnosis of serious and deepening depression. R. at 144, 146, 158, 168. The raw data was not requested by the ALJ or the district court during consideration of plaintiff's application for benefits, although each has the power and the responsibility to develop a complete record. See, e.g., Dixon v. Heckler, 811 F.2d 506 (10th Cir.1987):
 It is clear that, under the Social Security Act, the claimant has the burden of proving a disability. But it is equally clear that a Social Security disability hearing is a nonadversarial proceeding, in which the ALJ has a basic duty of inquiry, "to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." The duty of inquiry also extends to the district court in its review of the ALJ's determination.
 Id. at 510 (citations omitted).
 
 
 [4]
 On one Social Security Administration application form for benefits, plaintiff described a typical day at her previous job in the following terms: three hours per day walking; six hours per day standing; zero to one hour per day sitting; constantly required to bend and reach; weight required to be lifted and carried varied from five pounds to over fifty pounds (in the form of sheet metal and tools), with the heaviest weight lifted checked at 100 pounds, and weight frequently lifted and carried checked at up to twenty-five pounds. R. at 115. She described her work as using "rivet guns, drills, alligator squeeze, rivet shavers, bucking bars, small squeezes." R. at 121. On a different form, she responded that she spent one hour per day walking, four hours per day standing, and one to four hours per day sitting; she reported frequently lifting and carrying up to twenty-five pounds. R. at 187. She described her basic duties as: "Drilling out and putting together sheet metal products. Ranged from light to very heavy. Some jobs required heavy constructional. I have also worked outside, in Dusty areas, in areas with a strong smell of paint. Setting up jigs, turning Jigs." Id. The ALJ found that she could return to this past work, R. at 46, a conclusion echoed in the Appeals Council's decision, R. at 29 ("The claimant describes [her past] work as essentially light to occassionally [sic] medium work. The Dictionary of Occupational Titles (D.O.T.) indicates that the job (D.O.T. code 804.281-010), as customarily performed, does not entail exposure to significant pulmonary irritants.")
 
 
 [5]
 The pertinent social security regulation, 20 C.F.R. § 404.1571, states: "If you are able to engage in substantial gainful activity, we will find that you are not disabled." The ALJ considered plaintiff's ability to care for herself at home as support for his conclusion that she was able to perform gainful work in the national economy. R. at 46. While § 404.1571 also states that the general activities of an applicant can be used to show that an applicant can do more than she actually did, 20 C.F.R. § 404.1572 states: "Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity." This is common sense; the work setting places demands on an individual for consistent application of some level of work that the home setting does not. At home, the individual can stop and rest at will, adjust the method of working and goals of the work to her situation, and can work sporadically during difficult periods
 Consequently, we reject this as conclusive evidence, by itself, that plaintiff was able to pursue gainful work in the national economy. It would be relevant evidence if combined with other objective evidence showing that plaintiff, impaired by the combination of problems described above, was capable of regular, sustained employment during this period. We did not find such other objective evidence in the record.
 
 
 [6]
 But see R. at 185 (9/29/87, letter from psychotherapist: "In my considered professional opinion the interaction of her physical disabilities and her depressive disorder render her incapable of productive work. Particularly she would not be able to meet production norms and sustain work with adequate attendance in a standard job situation."); R. at 199 (4/5/88, form completed by psychotherapist: "She has never been able to function in a work setting since April of 1983.")
 
 
 [7]
 She described this work on a social security information form in this way: "I worked as an LPN in Special Procedures Services. Removed stitches, drains, Changed Dressings, Put on Packs, assisted Dr. Pushed Dressing Cart, Rearranged Patients in bed for treatments. assisted Drs." R. at 188