7 F.3d 1045
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Wesley R. HAMMONS, Petitioner,
v.
U.S. RAILROAD RETIREMENT BOARD, Respondent.
 No. 93-9524.
 United States Court of Appeals, Tenth Circuit.
 Oct. 7, 1993.
 
 Before LOGAN and MOORE, Circuit Judges, and McWILLIAMS, Senior Circuit Judge.
 
 ORDER AND JUDGMENT[1]
 
 1
 The parties to this appeal have indicated that oral argument is not desired. After examining the briefs and the appellate record, this three-judge panel has determined that oral argument would not materially assist the determination of this appeal. The cause is therefore ordered submitted without oral argument. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9.
 
 
 2
 On January 25, 1990, Wesley R. Hammons filed with the Railroad Retirement Board an application for a disability annuity under the Railroad Retirement Act, alleging that he was disabled from performing any regular work beginning January 2, 1986, due to a back injury sustained during the course of his employment with Burlington Northern Railroad.[2] 45 U.S.C. 231a and 20 C.F.R. 220.
 
 
 3
 Hammons' application for a disability annuity was administratively denied, whereupon he requested a hearing, which was held before Hearings Officer Scott Kuhlmey on July 15, 1991, in Oklahoma City, Oklahoma. Hammons was represented by counsel at this hearing, and he testified at length concerning his physical condition and the pain attendant thereto. Hammons testified that he had not been regularly employed since leaving Burlington Northern Railway on January 2, 1986. He also testified that for some time he had lived on a farm and raised chickens, some 40,000 of them, and managed 100 head of cattle. However, he added that he presently did none of the physical labor involved in raising the chickens or running the cattle, which work, he said, was done by his partner. In addition, the administrative record, consisting of numerous medical and vocational reports, was also before the Hearings Officer.
 
 
 4
 By a decision dated November 29, 1991, the Hearings Officer denied Hammons' application for benefits, holding that although Hammons' impairments did prevent him from returning to his prior employment with the railroad company, he still had the residual functional capacity to perform other jobs involving sedentary work which were available in the national economy. On review, the Railroad Retirement Board ("the Board") "affirmed and adopted" the decision of the Hearings Officer. Hammons then filed in this court a petition for review of the Board's decision. 45 U.S.C. 355(f).
 
 
 5
 The law is well settled that a decision of the Board regarding entitlement to benefits under the Railroad Retirement Act is not to be set aside on judicial review if it is supported by substantial evidence on the record and is not based on an error in law. Aspros v. United States R.R. Retirement Bd., 904 F.2d 384, 386 (7th Cir.1990); Andrews v. R.R. Retirement Bd., 595 F.2d 676, 681 (D.C.. Cir.1978).[3] In this same general connection, we spoke in Utah Copper Co. v. R.R. Retirement Bd., 129 F.2d 358, 361 (10th Cir.1942) as follows:
 
 
 6
 We conclude that as to all matters confided to the Railroad Retirement Board for administration, its judgments are final and conclusive if supported by substantial evidence and if free from arbitrary or capricious conduct. To hold otherwise would, in effect, be making of the Board a mere master to take the testimony and make recommendations of proposed findings of fact and conclusions of law.
 
 
 7
 As indicated, the Board "affirmed and adopted" the decision of the Hearings Officer, without further elaboration,
 
 
 8
 so, although technically we are reviewing the Board's decision, in reality we are reviewing the decision of the Hearings Officer. The decision of the Hearings Officer was in considerable detail and comprised eleven typewritten pages, single-spaced. Our study of the record before the Hearings Officer leads us to conclude that the findings of the Hearings Officer are supported by substantial evidence and that the Hearings Officer committed no error in law. On that basis, we affirm the Board's decision.
 
 
 9
 45 U.S.C. 231a(a)(1)(v) provides for the payment of a disability annuity under the Railroad Retirement Act to "individuals whose permanent physical or mental condition is such that they are unable to engage in any regular employment." In this regard, 20 C.F.R. 220.26 provides as follows:
 
 
 10
 An employee ... is disabled for any regular employment if he or she is unable to do any substantial gainful activity because of a medically determinable physical or mental impairment which meets the duration requirement defined in 220.28.... To meet this definition of disability, a claimant must have a severe impairment, which makes him or her unable to do any previous work or other substantial gainful activity which exists in the national economy. To determine whether a claimant is able to do any other work, the Board considers a claimant's residual functional capacity, age, education and work experience (emphasis added).
 
 
 11
 20 C.F.R. 220.100 sets forth the steps to be followed in determining the question of disability, or no disability, of one claiming a disability annuity under the Railway Retirement Act. Those steps, in essence, are as follows:
 
 
 12
 1. A claimant who is working and engaging in substantial gainful activity will be found to be not disabled regardless of his or her impairments, age, education or work experience.
 
 
 13
 2. A claimant who does not have a severe impairment will be found to be not disabled without consideration of age, education, or work experience. A severe impairment is one that significantly limits the claimant's physical or mental abilities to do basic work activities.
 
 
 14
 3. If a claimant is not working and has a severe impairment which meets or equals a listed impairment in Appendix 1 of the Board's disability regulations, a finding of disabled will be made without consideration of the claimant's age, education, or work experience.
 
 
 15
 4. If the claimant's impairment is severe but still does not meet or equal a listed impairment, the Board will review the claimant's residual functional capacity, and if a claimant is nonetheless capable of performing work he or she has done in the past, a finding of not disabled shall be made. To make this determination, a review is made of the claimant's residual functional capacity and the physical and mental demands of his or her past work.
 
 
 16
 5. If a claimant is unable to do his past relevant work because of his or her impairments, the claimant's residual functional capacity and age, education, and work experience will then be reviewed to determine whether the claimant can do other work that exists in the national economy.
 
 
 17
 In the instant case, the Hearings Officer found that Hammons was not then employed in substantial gainful employment and that he did have a severe impairment which prevented him from performing his past railroad job. The Hearings Officer further found that Hammons' severe impairment did not meet or equal a "listed impairment," and that, considering his age (40 years of age), education (high school education) and the evidence concerning Hammons' physical strength, as well as the evidence concerning pain, Hammons did have the residual functional capacity to do sedentary jobs which were available in the economy.[4]
 
 
 18
 Hammons' basic position in this court is that the Hearings Officer did not properly assess the evidence as it pertained to Hammons' pain. Hammons did testify in detail concerning his pain problem. However, medical reports before the Hearings Officer permitted the inference that Hammons was overstating his pain problem. In connection with Hammons' pain and the extent thereof, the Hearings Officer spoke as follows:
 
 
 19
 The hearings officer finds that the appellant would not be able to perform his work as switchman or footboard yardmaster as that work required lifting of over 75 pounds.
 
 
 20
 Since the hearings officer finds that the appellant's impairments preclude his return to past work as he performed it, the burden of proof shifts to the Board to establish that there is other substantial gainful work which exists in the national economy which the appellant can perform, considering the affect of his impairments, and his age, education, and work experience.
 
 
 21
 The hearings officer has given consideration in the appellant's case to his testimony, medical treatment, daily activities, and the assessments of examining physician.
 
 
 22
 The issues in the appellant's case is the extent of his pain. The appellant testified to pain in the lower back and legs and in the shoulders which he states prevents him from performing any work. The hearings officer does not find the restrictions testified to by the appellant to be credible.
 
 
 23
 The hearings officer finds that while the appellant does have low back and shoulder pain, his pain would not prevent him from performing sedentary work. The hearings officer has given consideration in the appellant's case to his testimony, medical treatment, daily activities, and the assessments of examining physicians.
 
 
 24
 In our view, the record supports the Hearings Officer's finding that, though Hammons did experience some pain, his pain did not prevent him from doing sedentary work.[5] As a result, the Hearings Officer did not err in resorting to the medical-vocational guideline as set forth in 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 1, Rule 201.23, which provides that someone of Hammons' age, education and previous work experience is "not disabled" when he can still perform sedentary work. Automatic application of the medical-vocational "grids" is appropriate when a claimant's residual functional capacity, age, education and work experience precisely match a grids category and there is no so-called non-exertional limitation, such as pain, which further affects an individual's capacity to work. Further, to be "disabled" requires more than mere inability to work without any pain, and that to be "disabling" the pain must be so severe that either by itself, or in conjunction with the impairments, it precludes any substantial gainful employment. Gossett v. Bowman, 862 F.2d 802, 806-07 (10th Cir.1988). In the instant case, the Hearings Officer found, in effect, that Hammons had no such non-exertional limitation.
 
 
 25
 This case is different from Thompson v. Sullivan, 987 F.2d 1482, 1492 (10th Cir.1993) where we said that because there was evidence of a non-exertional limitation, namely pain, such precluded the Secretary from relying "conclusively" on the medical-vocational grids. In this connection, it should be noted that in Channel v. Heckler, 747 F.2d 577, 582, n.6 (10th Cir.1984), we stated that the "mere presence" of a non-exertional impairment did not automatically preclude reliance on the grids, and use of the grids would be foreclosed only to the extent that the non-exertional impairment further limited the range of jobs available to the claimant. The present case is not one where the Hearings Officer ignored or refused to consider Hammons' testimony concerning pain. Rather, the Hearings Officer took into consideration Hammons' testimony concerning pain, along with all the other evidence before him, and simply found that Hammons' pain was not a significant non-exertional impairment.
 
 
 26
 In sum, the state of the record before the Hearings Officer did not compel the Hearings Officer to find that Hammons was entitled to a disability annuity under the Railroad Retirement Act.[6] Rather, the record permits, and therefore supports, the finding of the Hearings Officer that Hammons had the residual functional capacity to perform sedentary work and accordingly was not entitled to a disability annuity.
 
 
 27
 The Board's decision is affirmed.
 
 
 
 [1]
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir. R. 36.3
 
 
 [2]
 In his application, Hammons stated that he was born June 22, 1952, and that he was a high school graduate. He stated that he began working for Burlington Northern Railroad in July, 1970. While working as a switchman for Burlington Northern Railroad he stated that he injured his back on December 30, 1985, when he was hit by a boxcar door which caused him to hit a steel post. Because of the injuries sustained in this accident, Hammons ceased working for Burlington Northern Railroad on January 2, 1986. Hammons was initially diagnosed as suffering from an acute herniated lumbar disc, but, after further testing, the diagnosis was changed to acute lumbar strain over a preexisting spondylolisthesis
 
 
 [3]
 45 U.S.C. 355(f) provides that "[t]he findings of the Board as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive."
 
 
 [4]
 Pursuant to 20 C.F.R. 220.35, in addition to its authority to decide whether a claimant is entitled to a disability annuity under the Railroad Retirement Act, the Board is also authorized to decide, in certain cases, whether a claimant is disabled as that term is defined in the Social Security Act. Accordingly, courts have held that the standards for determining whether a claimant is entitled to a disability annuity under the Railroad Retirement Act are the same as for determining disability under the Social Security Act. See Aspros v. United States R.R. Retirement Bd., 904 F.2d 384, 386 (7th Cir.1990) and Burleson v. United States R.R. Retirement Bd., 711 F.2d 861, 862 (8th Cir.1983). In Burleson, the Eighth Circuit stated that "it is accepted practice to use social security cases as precedent for railroad retirement cases."
 
 
 [5]
 Sedentary work is defined in 20 C.F.R. 404.1567(a). In finding that Hammons could, despite his exertional impairments, perform sedentary work, the Hearings Officer relied on the medical reports of Drs. Raby and Winters
 
 
 [6]
 In I.N.S. v. Elias-Zacarias, --- U.S. -----, 112 S.Ct. 812, 815, n.1 (1992), the Supreme Court held that in order to reverse a finding by the Board of Immigration Appeals, that an alien was not entitled to asylum or a withholding of deportation, the reviewing court must find that the evidence not only supports a conclusion that the alien is entitled to asylum or a withholding of deportation, but compels such a finding. Such supports our conclusion that the record before the Hearings Officer did not compel a finding in favor of Hammons. The record might well have permitted such, but did not compel it