Jack V. TAYLOR, Plaintiff,

v.

John J. CALLAHAN, Commissioner of Social Security, Defendant.

Civil Action No. 96–2245–KHV.

United States District Court, D. Kansas.

June 24, 1997.

Lowell C. Paul, Kansas Legal Services, Inc., Topeka, KS, Karin Anderson, Kansas City, KS, for Jack V. Taylor.

Melanie D. Caro, Office of U.S. Attorney, Kansas City, KS, Nancy M. Landis, Office of U.S. Attorney, Topeka, KS, for Commissioner of Social Security.

### Memorandum and Order

VRATIL, District Judge.

This matter comes before the Court on *Plaintiff's Brief In Support Of Petition To*

*Reverse Decision Of The Defendant* (Doc. # 14) filed November 20, 1996. Plaintiff brings this action pursuant to 42 U.S.C. § § 405(g) and 1383(c)(3). Plaintiff seeks judicial review of the Commissioner's decision to deny benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.*

## A. PROCEDURAL HISTORY

Plaintiff filed an application for Disability Insurance Benefits on November 19, 1992 (Tr. at 26) and protectively filed an application for Supplemental Security Income on September 10, 1992. (Tr. at 12.) The Social Security Administration combined the applications and denied them both initially (Tr. at 44, 91) and on reconsideration. (Tr. at 72, 95.) Plaintiff then requested a hearing with an Administrative Law Judge (ALJ). (Tr. at 99.) Following the hearing, the ALJ concluded that plaintiff was not disabled (Tr. at 12–17) and the Appeals Council denied plaintiff's request for review. (Tr. at 4–5.) The ALJ's decision thus stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481 (1996).

## B. SUMMARY OF FACTS

Plaintiff, Jack V. Taylor, claims that he became disabled and unable to work on February 1, 1992. Plaintiff claimed disability due to weight loss from diabetes, as well as severe pain in his stomach and esophagus. Prior to plaintiff's claimed disability, he worked as a trash disposal worker, a press operator and a delivery driver. Plaintiff made an unsuccessful work attempt as a machinist in May and June of 1992. (Tr. at 16.) He has an eleventh grade education and is literate. (Tr. at 12–17.) Since his initial application, plaintiff has been diagnosed with the following conditions:

diabetic ketoacidosis (Tr. at 226, 256, 292, 375, 416, 423)

poorly controlled non-insulin dependent diabetes mellitus (Tr. at 212)

insulin dependent diabetes mellitus (Tr. at 292, 326, 385, 393, 423)

noncardiac chest pains (Tr. at 192)

alcohol abuse (Tr. at 203, 326, 375)

tobacco abuse (Tr. at 292, 326, 375, 423)

bronchitis, (Tr. at 92, 326, 385, 393)

pneumonia (Tr. at 226, 375, 423)

esophagitis (Tr. at 385, 393)

probable peptic ulcer disease (Tr. at 203)

hyperglycemia (Tr. at 203)

dental caries (Tr. at 212, 256)

hypoxia (Tr. at 393)

hypokalemia (Tr. at 423)

chronic obstructive pulmonary disease (Tr. at 423)

electrolyte imbalance (Tr. at 375)

supra ventricular tachycardia (Tr. at 326)

viral syndrome (Tr. at 292)

malnutrition (Tr. at 292)

gastroesophageal reflux disease (Tr. at 393)

duodenitis (Tr. at 393)

antral gastritis (Tr. at 393)

hypertension (Tr. at 393, 416.)

The ALJ made the following findings:

1. Claimant met the special earnings requirement of the Act on February 1, 1992, the date claimant stated he became unable to work and continues to do so through the date of this decision.

2. Claimant has not engaged in substantial gainful activity since February 1, 1992 and the short term work efforts thereafter were unsuccessful work attempts.

3. The medical evidence establishes that claimant has insulin dependent mellitus and cardiac arrhythmia, but he does [sic] have an impairment or combination of impairments listed in, or medically meet [sic] equal to one in Appendix 1, Subpart P, Regulations No. 4.

4. Claimant's testimony as to the severity of his impairments and attending symptoms is found to be no more than partially credible for the reasons specifically setforth [sic] in the Rationale section of the decision.

5. Claimant retains the residual functional capacity for lifting up to 30 pounds,

walking one block, standing 15 to 20 minutes and sitting for one hour.

6. Claimant is incapable of performing any of his past relevant work.

7. Claimant has ranged between 39 and 43 years of age.

8. Claimant has an 11th grade education.

9. Claimant is noncompliant with his insulin regimen.

10. Based on his exertional capacity for a wide range of light work and claimant [sic] age, education and work experience Section 404.1569 and the framework of Rule 201.24, Table No. 1, Appendix 2, Subpart P, Regulations No. 4 indicates a conclusion of not disabled is appropriate.

11. Although claimant alleges nonexertional pain and dizziness, when he is compliant with his medication regimen these are not significant factors.

12. At all times pertinent claimant has been capable of performing a significant number of jobs which exist in the economy, the numbers and identities which were specifically setforth [sic] by the vocational expert at the time of the hearing.

13. Claimant has not been under a "disability" as defined in the Social Security Act, as amended at any time through the date of this decision.

## C. STANDARD OF REVIEW

The Commissioner's determination is binding on this Court if the ALJ's determination is supported by substantial evidence. *See Hamilton v. Secretary of Health & Human Servs.*, 961 F.2d 1495, 1500 (10th Cir. 1992). Substantial evidence is more than a scintilla; it is such relevant evidence as a reasonable mind might deem adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). This Court's review of the Commissioner's determination is limited. *See Hamilton*, 961 F.2d at 1497. The Court's function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision and whether the Commissioner applied the correct legal standards. *Id.* at 1497–98. It is not a quantitative exercise. *See Knipe v.*

*Heckler*, 755 F.2d 141, 145 (10th Cir.1985). "Evidence is not substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion." *Id.* quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3rd Cir.1983).

## D. ANALYSIS

The Commissioner concedes that the ALJ's decision has deficiencies, but does not specify what they are. *Brief of the Commissioner* (Doc. # 26) filed April 15, 1997. Both the Commissioner and plaintiff have requested that this Court reverse and remand the Social Security Administration's final decision to deny benefits. The Commissioner asks the Court to remand with instructions to further develop the record, however, while plaintiff requests a remand with an order to award benefits. For the following reasons, the Court reverses and remands with instructions to further develop the record.

The Social Security Administration follows a five step sequential evaluation when determining whether a claimant is disabled. *See* 20 C.F.R. § 416.920 (1996). Plaintiff initially carries the burden of proof. To be found disabled, plaintiff must first show that he is not working. *See Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir.1988). Second, plaintiff must show that he has an impairment or combination of impairments which is severe enough to limit his ability to do basic work activities. *Id.* If plaintiff's impairment meets or equals one of the impairments listed in the "Listing of Impairments," 20 C.F.R. § 404, subpt. P, Appendix 1, plaintiff is conclusively presumed to be disabled. *Id.* This is considered step three. Finally, if plaintiff can show that he is unable to perform work which he has done in the past (step four), *id.*, plaintiff establishes a prima facie case of disability. *See Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir.1988). The Commissioner must then show that plaintiff is not disabled. This is step five. "A person whose impairment precludes performance of past work is disabled unless the [Commissioner] demonstrates that the person can perform other work available in the national economy.

Factors to be considered are age, education, past work experience, and residual functional capacity." *Gossett,* 862 F.2d at 805. If the Commissioner determines that the claimant is disabled (at step three) or not disabled (at step four or step five), further evaluation is unnecessary. *See Williams,* 844 F.2d at 750.

The parties do not dispute that plaintiff successfully established a prima facie case of disability. *See Williams,* 844 F.2d at 751. Plaintiff contends, however, that the Commissioner failed to meet his burden of proof at step five. Plaintiff argues that the ALJ failed to take into account all of plaintiff's medical history as well as the combined effects of his medical conditions. Plaintiff further contends that the ALJ's failure to account for the full range of plaintiff's condition, and his limited analysis of plaintiff's failure to follow prescribed medical treatment, led the ALJ to base his decision on faulty premises.

### 1. ALJ'S STEP FIVE ANALYSIS

■ Plaintiff argues that the ALJ applied incorrect legal standards in determining that plaintiff could perform other jobs in the national economy. At step five, because plaintiff has already proven that he cannot continue his previous employment, the Commissioner must show that plaintiff is able to perform other work available in the national economy, *see Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The ALJ can meet his burden of proof in two ways. The first is by relying on the appendix two grids. The second is by relying on a vocational expert's testimony. In this case the ALJ did both: he relied on the vocational expert in the reasoning portion of his opinion (Tr. at 15–17) but on the grids in his conclusory findings.

#### a. Grids

To apply the grids, the ALJ must first find the following:

1) that the claimant has no significant nonexertional impairment;

2) that the claimant can do the full range of work at a particular residual functional capacity on a daily basis; and

3) that the claimant can perform most of the jobs in that residual functional capacity category.

*See Thompson v. Sullivan,* 987 F.2d 1482, 1488 (10th Cir.1993). Under this test, the ALJ must first decide whether the claimant asserts exertional (strength-related) impairments, nonexertional (pain or mental) impairments, or both. *See Thompson,* 987 F.2d at 1487. Nonexertional limitations may include "mental impairments, such as the inability to understand, to carry out and remember instructions, and to respond appropriately in a work setting ... chronic alcoholism; drug dependence; dizziness; and pain." *Williams,* 844 F.2d at 752. The grids consider only those impairments that result in exertional limitations; they may not be fully applicable when "nonexertional impairments are present." *Channel v. Heckler,* 747 F.2d 577, 580 (10th Cir.1984). The mere presence of a nonexertional impairment does not preclude reliance on the grids, *id.* at 582 n. 6, but the nonexertional impairment must interfere with the ability to work. *See Thompson,* 987 F.2d at 1488.

■ In this case the ALJ ignored plaintiff's claims of nonexertional impairments due to pain and dizziness, because he found that they were not significant factors when plaintiff followed his medical regimen. (Tr. at 17.) The ALJ cited no record evidence in support of this finding, however, and the Court's review of the record doesn't disclose such evidence. In addition, although the ALJ alluded to certain nonexertional impairments, he made no specific findings concerning them. (Tr. at 13.) In short, the record does not contain substantial evidence to support a finding that plaintiff had no significant nonexertional impairment. As a result, the ALJ erred in his reliance on the grids to demonstrate that plaintiff is capable of performing work which is available in the national economy.

#### b. Vocational Expert

■ If the grids are not applicable, expert vocational testimony can be used to demonstrate that plaintiff can perform other jobs in the national economy. The ALJ's reliance on the vocational expert in this

case, however, poses two problems: (1) the imprecise relationship between the factual findings of the ALJ and the hypothetical question which he posed to the vocational expert; and (2) his apparent failure to consider plaintiff's conditions as a whole. According to the ALJ, the hypothetical question to the vocational expert duplicated as exactly as possible plaintiff's condition. The Court disagrees. A hypothetical question to the vocational expert must relate all of a claimant's impairments with precision. *See Hargis v. Sullivan,* 945 F.2d 1482, 1492 (10th Cir.1991) (reversing ALJ's decision because question to vocational expert did not include claimant's mental impairments). The ALJ can limit his hypothetical, however, to those impairments which he finds to be credible. *See Gay v. Sullivan,* 986 F.2d 1336, 1341 (10th Cir.1993). In this case, the ALJ held that claimant retained the residual functional capacity to lift up to 30 pounds, stand fifteen to twenty minutes, sit for one hour and walk one block. (Tr. at 16.) His hypothetical question assumed that plaintiff had unlimited capacity to walk, however, and it hypothesized a condition which the ALJ did not find plaintiff suffered—"some trouble bending." [1]

 Second, the ALJ did not express understanding of plaintiff's condition as a whole by looking at plaintiff's impairments in combination. The ALJ needs to show that he considered all the evidence. *See Clifton v. Chater,* 79 F.3d 1007, 1009 (10th Cir.1996). The ALJ is not required to discuss every piece of evidence, *id.* at 1009–10, nor does the Court expect him to list every diagnosis, but the ALJ is required to show how plaintiff's overall condition may or may not constitute a disability. *See Hargis,* 945 F.2d at 1491. Congress has mandated the following:

> In determining whether an individual's physical or mental impairment or impairments could be the basis of eligibility under this section, the Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if con-

sidered separately, would be of such severity. If the Secretary does find a medically severe combination of impairments, *the combined impact of the impairments shall be considered throughout the disability determination process.*

42 U.S.C. § 423(d)(2)(C) (emphasis added). Here, the ALJ made the following statement:

> Medical evidence on file establishes that claimant has insulin dependent diabetes mellitus and cardiac arrhythmia. One or more of these disorders impose some limitation on claimant's ability to function in the workplace and he therefore has an impairment as that term is defined in the Regulations. Nonetheless, he does not have impairments, considered singularly or in combination, which meet or equal any criteria contained in the Listing of Impairments, Appendix 1, Subpart P, Regulations No. 4.

(Tr. at 13.) The ALJ found that plaintiff had a combination of impairments, but he did not consider that fact in step five, in deciding whether plaintiff could perform other work available within the national economy.

In addition, the ALJ never mentioned the numerous conditions, besides diabetes and cardiac arrhythmia, which afflict plaintiff. The ALJ noted that the "claimant's primary allegation in this case is that it is diabetes and the residual consequences therefrom [sic] disable him from all employment." (Tr. at 15.) This statement suggests that the ALJ did not consider all of plaintiff's conditions but instead focused only on his diabetes. The ALJ did not find that plaintiff's remaining conditions were residual consequences of diabetes, nor does the record contain evidence to that effect. On this record, the Court cannot determine with confidence which combination of factors the ALJ relied on, and which he discounted, to determine plaintiff's present physical condition.

## 2. FAILURE TO FOLLOW PRESCRIBED TREATMENT

 A claimant may be found to be disabled under the Social Security Administra-

---

1. The ALJ's question was this: "If you presume he could lift 30 pounds, which he testified here today, and he could stand for 15 to 20 minutes, sit for hour period of time at a time, could walk

and have some trouble bending, and I presume we were in the light area there today, that alone, without anything else, are there jobs in the market he could do?" (Tr. at 485.)

tion's five step analysis. If the claimant does not follow his prescribed treatment, however, the Social Security Administration may nonetheless deny benefits. *See* 20 C.F.R. § 416.930(b) (1996). The Tenth Circuit has established the test which must be followed in making such a determination.

> Courts reviewing whether a claimant's failure to undertake treatment will preclude the recovery of disability benefits have considered four elements, each of which must be supported by substantial evidence: (1) the treatment at issue should be expected to restore the claimant's ability to work; (2) the treatment must have been prescribed; (3) the treatment must have been refused; (4) the refusal must have been without justifiable excuse.

*Teter v. Heckler,* 775 F.2d 1104, 1107 (10th Cir.1985). The Social Security Administration has developed a similar standard. In Social Security Ruling 82–59, the agency states:

> SSA may make a determination that an individual has failed to follow prescribed treatment only where all of the following conditions exist:
>
> 1. The evidence establishes that the individual's impairment precludes engaging in any substantial gainful activity (SGA) ...
>
> 2. The impairment has lasted or is expected to last for 12 continuous months from onset of disability or is expected to result in death; and
>
> 3. Treatment which is clearly expected to restore capacity to engage in any SGA (or gainful activity, as appropriate) has been prescribed by a treating source; and
>
> 4. The evidence of record discloses that there has been refusal to follow prescribed treatment.
>
> Where SSA makes a determination of "failure," a determination must also be made

as to whether or not failure to follow prescribed treatment is justifiable.

1982 WL 31384, 1 (S.S.A.). The regulations state that the Social Security Administration will look at the claimant's physical, mental, educational, and linguistic limitations for following prescribed treatment. *See* 20 C.F.R. §§ 416.930(c), 404.1530(c) (1996). In addition, Social Security Ruling 82–59 states:

> The record must reflect as clearly and accurately as possible the claimant's or beneficiary's reason(s) for failing to follow the prescribed treatment. Individuals should be asked to describe whether they understand the nature of the treatment and the probable course of the medical condition (prognosis) with and without the treatment prescribed. The individuals should be encouraged to express in their own words why the recommended treatment has not been followed.

1982 WL 31384, 2 (S.S.A.). Once the claimant demonstrates that he is impaired, it is the government's burden to demonstrate each of the four elements which are specified by the Tenth Circuit. *See Weakley v. Heckler,* 795 F.2d 64, 66 (10th Cir.1986).

The Commissioner and plaintiff have put four separate treatments at issue: cessation of alcohol, cessation of smoking, compliance with prescribed diet, and consistency in taking insulin. The record contains substantial evidence that these treatments were prescribed for plaintiff, but that he has refused them.[2] The record lacks substantial evidence, however, that plaintiff will be able to work if he changes his behavior. Common sense indicates that plaintiff's condition will improve if he follows medical advice and the record supports a finding that changes in the plaintiff's behavior should somewhat improve plaintiff's medical condition. (Tr. at 373). The ALJ relied upon the following evidence (a medical note by plaintiff's doctor made two

---

**2.** Plaintiff's assertion that cessation of alcohol and tobacco were merely "suggestions" and not prescriptions is incorrect. There is substantial evidence in the record that these were prescribed. *But see Teter v. Heckler,* 775 F.2d 1104,

1107 (10th Cir.1985) (surgery not prescribed because doctors recommended further testing and evaluation before final decision). Medical records in this case consistently show that plaintiff's

weeks after the administrative hearing)[3] to support his finding that plaintiff straightens out when he takes his insulin:

> Patient here for follow-up on blood sugars and diabetes. Patient has brought with him his list of AccuCheks, which ranged from 200 to 500. He states that he has only had one episode of hyperglycemia in the past 2 weeks. This was a major change for him, in that we convinced him that he should take his insulin dosage and not skip any, no matter what, and stay on as close of a regular regimen as possible.

(Tr. at 373.) The ALJ did not refer to any other evidence to support his decision. This cursory medical note does not constitute substantial evidence, however, for the ALJ's finding that "[a]lthough claimant alleges non-exertional pain and dizziness, when he is compliant with his medication regimen these are not significant factors." (Tr. at 17.) The note does not comment on how alcohol, tobacco and diet influence the pain and dizziness which plaintiff claims to suffer. It falls far short of demonstrating that improvements in plaintiff's life style will restore his ability to work. The ALJ should undertake an inquiry to address these and other relevant factors under *Teter v. Heckler, supra.* The ALJ will also be mindful that plaintiff's failure to undertake treatment will not bar him from receiving disability benefits if he has a justifiable excuse for refusing treatment. The ALJ noted that "claimant is not taking his medications and has provided no valid excuse for not taking such other than his naked assertion that he always takes his insulin. This is refuted in the record and the undersigned so finds." (Tr. at 15.) Because the ALJ rejected plaintiff's contention that he always took his insulin, he made no findings whether plaintiff had a justifiable excuse for occasionally failing to take his insulin. A careful look at the record reveals that plaintiff may have had a justifiable excuse. The following exchange took place between plaintiff's lawyer and plaintiff at the hearing:

> Q And you did not always take your insulin?

> A Well, there at first when I got sick, like last year, there was a couple of times I didn't take it because of the way I was feeling. But I had nobody trained that could sit there and take it for me.

(Tr. at 480; *see also* Tr. at 478–79.)

The medical records confirm plaintiff's answer. (*See* Tr. at 224, 254, 294, 385, 420.) One such typical record states that plaintiff "reported developing nausea and vomiting with abdominal pain. He stopped taking his insulin and developed progressive weakness." (Tr. at 224.) Later medical records evidence a similar pattern.

In addition, medical records suggest that even at the time of the administrative hearing on January 19, 1995, plaintiff did not understand how to treat his diabetes. In December of 1994, a little over a year and a half after his initial diagnosis, plaintiff made a "step forward" because he "was able to do AccuCheks, record them on a piece of paper and understand that his insulin dose effects those readings." (Tr. at 365.) When plaintiff had a low blood sugar he would not take his insulin and as a result his blood sugars would rise. (Tr. at 374.) Plaintiff's logic was not necessarily flawed because the doctors then told him to cut his insulin dosage in half when he had low sugar. (Tr. at 374.) In December of 1992, a hospital dietician noted that plaintiff only verbalized a fair understanding of his ability to use the Exchange Booklet in meal planning. (Tr. at 214.)

It was the Commissioner's burden to show that plaintiff was not justified in refusing his treatment. The Commissioner has requested a remand to obtain a mental status examination of plaintiff to determine whether plaintiff has the ability to follow medical advice. *See Memorandum in Support of Defendant's Motion to Remand* (Doc. # 1 5) filed January 15, 1997. Plaintiff's psychological examination suggests that plaintiff has average intelligence (Tr. at 277–79) and can meet the "performance and social demands of work." (Tr. at 279.) Because the record also contains evidence that plaintiff does not

---

doctor informed him that he should stop smoking tobacco and drinking alcohol.

**3.** At the administrative hearing on January 19, 1995, the ALJ agreed to hold the record open for 30 days.

understand how to follow his treatment, the Commissioner's request should be granted.

### 3. UNDERSTANDABLE LANGUAGE

■■■ Finally, for meaningful judicial review the ALJ is required to give reasons for his conclusion in understandable language. *See Clifton,* 79 F.3d at 1009, 42 U.S.C. § 405(b)(1). In this case the ALJ's analysis is difficult to understand because he has confused two distinct tests: the fifth step of the five step disability analysis and the first step of the prescribed treatment test. The fifth part of the five step analysis is to determine whether the claimant is able to perform other jobs in the national economy. 42 C.F.R. § 416.920. The ALJ implicitly answered that question in the negative, so long as plaintiff's diabetes is not controlled through medication, diet and life style. The first part of the prescribed treatment test asks whether the prescribed treatment, if followed, will restore the claimant's ability to work. In that regard, the ALJ found

> the vocational expert testified that *if* claimant's diabetes is controlled by medications, he would be capable of performing numerous jobs which exist in the economy, the numbers and identities of which were specifically set forth by the vocational expert at the time of the hearing. The Administrative Law Judge finds the vocational expert's testimony to be credible and consistent with objective medical evidence of record, hospital reports, clinical findings and claimant's own testimony as to his residual functional capacity insofar as physical limitations are concerned.

(Tr. at 15) (emphasis added). On remand the ALJ should expressly determine whether plaintiff can perform other jobs under the proper step five analysis. Whether plaintiff can be restored to work by following prescribed treatment is a separate issue.

### 4. REMAND

■■■ In reversing the Commissioner's determination, the Court has discretion to remand for a further hearing or to award

benefits. *See Dixon v. Heckler,* 811 F.2d 506, 511 (10th Cir.1987). The Tenth Circuit has awarded benefits when the Commissioner has patently failed to satisfy the burden of proof at step five, and has long delayed proceedings. *See Ragland v. Shalala,* 992 F.2d 1056, 1060 (10th Cir.1993). The Tenth Circuit has also reversed and remanded for benefits when substantial evidence required a finding of disability. *See Talbot v. Heckler,* 814 F.2d 1456, 1465 (10th Cir.1987). When the record "does not substantially support a finding of disabled any more than it supports a finding of not disabled," however, the Tenth Circuit has remanded for further proceedings.[4] *Thompson v. Sullivan,* 987 F.2d 1482, 1492 (10th Cir.1993). The Tenth Circuit in *Harris v. Secretary of Health and Human Servs.,* 821 F.2d 541, 545 n. 1 (10th Cir.1987) made the following distinction:

> We note that Talbot does not stand for the proposition that, where the Secretary does not meet his burden at step five of the disability determination process, an automatic reversal and remand for award of benefits rather than a remand for additional fact finding is called for. As Talbot itself acknowledges in footnote 6, "a remand for additional proceedings would be appropriate where an ALJ made no findings as to nonexertional impairments or where minimal findings were not supported by adequate evaluation of the evidence in the record." 814 F.2d at 1465.

The key determination between awarding benefits and requiring further proceedings is whether additional fact finding would serve an useful purpose. *Id.* In this case, the Court is unable to say that the record supports a finding of disabled any more than a finding of not disabled. Additional fact finding will clarify the extent of plaintiff's condition and his justification for not following his doctors' prescribed treatment. A remand for additional fact finding is therefore appropriate.

**IT IS THEREFORE ORDERED,** pursuant to sentence four of 42 U.S.C. § 405(g), that this case is **REVERSED** and **RE-**

---

4. *See Hawkins v. Chater,* 113 F.3d 1162, 1169–70 (10th Cir.1997) (case remanded at step two because record contained an insufficient basis to determine whether claimant's impairment was severe or not severe).

**MANDED** to the Commissioner for further proceedings in accordance with this opinion.