**Ellsworth R. WRIGHT III, Plaintiff,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.**

**No. 02–4119–JAR.**

United States District Court, D. Kansas.

Sept. 29, 2003.

Sharon J. Meyers, Kansas City, MO, for Plaintiff.

David D. Plinsky, Office of United States Attorney, Topeka, KS, for Defendant.

## ORDER OF REVERSAL AND REMAND PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)

ROBINSON, District Judge.

Plaintiff Ellsworth R. Wright III brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of Defendant Commissioner of Social Security's denial of his application for a period of disability, disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Plaintiff filed a Motion for Judgment (Doc. 8). After Defendant filed her Answer, she filed a Motion to Remand (Doc.13), asking the Court to reverse and remand this action pursuant to sentence four of 42 U.S.C. § 405(g). Plaintiff objects, seeking reversal and an immediate award of benefits.

The Court has authority to remand a social security case in three instances.[1] The Court may remand the case in connection with its decision on the merits and judgment either affirming, reversing or modifying the Defendant's decision.[2] Alternatively, the court may remand the case without ruling on the merits if (1) the Secretary requests remand, for good cause, prior to filing her answer; or (2) new and material evidence is produced, and there is good cause for failing to incorporate such evidence in the earlier proceeding.[3] These are "sentence six" remands.[4]

---

1. *See* 42 U.S.C. § 405(g); *Melkonyan v. Sullivan,* 501 U.S. 89, 99, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991).

2. *Id.* at 98, 111 S.Ct. 2157; 42 U.S.C. § 405(g).

3. 42 U.S.C. § 405(g).

4. *Melkonyan,* 501 U.S. at 100 & n. 2, 111 S.Ct. 2157.

Defendant does not seek a remand under sentence six, and it would not be appropriate in this case, because Defendant filed a motion to remand *after* she filed an answer. Furthermore, Defendant has not demonstrated good cause, such as new and material evidence.[5] One basis for Defendant's request for a sentence four remand is that on October 12, 2002, during the pendency of this action, another component of the Social Security Administration awarded Plaintiff benefits from March 15, 2002 forward. But, Defendant has failed to establish that this allowance decision was based on any new evidence that is pertinent to the period of time at issue here.[6]

Rather, Defendant requests a sentence four remand for: further evaluation of the medical opinions of treating physicians, Drs. Patel and Anya; further evaluation of the credibility of Plaintiff's subjective complaints including determining whether Plaintiff's failure to comply with treatment was due to his mental impairment; as well as further evaluation of Plaintiff's allegations in light of the October 12, 2002 allowance decision. After reviewing the merits of this appeal, the Court concludes that this case should be reversed and remanded for further evaluation of these and other issues.

**Standard of Review**

Judicial review under 42 U.S.C. § 405(g) is limited to whether Defendant's decision is supported by substantial evidence in the record as a whole and whether defendant applied the correct legal standards.[7] The Tenth Circuit has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[8] Evidence is not substantial if it is conclusory or overwhelmed by other evidence in the record.[9] In the course of its review, the court may not weigh the evidence or substitute its judgment for that of defendant.[10]

A person is disabled within the meaning of the Social Security Act "only if his physical and mental impairments, considered in combination, preclude him from doing his previous work, as well as any other 'substantial gainful work which exists in the national economy.'"[11] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . ."[12]

---

5. 42 U.S.C. § 405(g) provides that the court may "order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."

6. *See Cagle v. Califano*, 638 F.2d 219, 221 (10th Cir.1981) (to remand based on new evidence, the reviewing court must conclude that "the Secretary's decision might reasonably have been different had that (new) evidence been before him when his decision was rendered.") (quotation omitted); *Hargis v. Sullivan*, 945 F.2d 1482, 1493 (10th Cir.1991) ("[i]mplicit in th[e] requirement [that the new evidence would have changed the Secretary's decision had it been before him] is that the proffered evidence relate to the time period

for which the benefits were denied.") (citation omitted).

7. *See White v. Massanari*, 271 F.3d 1256, 1257 (10th Cir.2001) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir.1994)).

8. *Id.* (quoting *Castellano*, 26 F.3d at 1028).

9. *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir.1992).

10. *White*, 271 F.3d at 1257.

11. *Franklin v. Chater*, 104 F.3d 367, 1996 WL 731591, *1 (10th Cir.1996) (quoting 42 U.S.C. § 423(d)(2)).

12. *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir.1988) (quoting 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (1982)).

The Social Security Administration has established a five-step sequential evaluation process for determining whether a claimant is disabled.[13] If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary.[14] The first step is determining whether the claimant has been engaged in substantial gainful activity.[15] The second step is determining whether there has been a threshold showing of a medically severe impairment or combination of impairments. The third step is determining whether the impairment or impairments are conclusively presumed to be disabling, by virtue of being one of the listed impairments, or being equivalent to one of the listed impairments.[16] The fourth step is determining whether the impairments prevent the claimant from performing work he has performed in the past. The fifth step is determining whether the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of his age, education, and work experience.[17] At this fifth step, the burden of proof shifts from the claimant to the Social Security Administration to show that claimant retains the capacity "to perform an alternative work activity and that this specific type of job exists in the national economy."[18]

When there is an alleged mental disability, Defendant must engage in the evaluative procedure detailed in 20 C.F.R. § 404.1520a.[19] Defendant must first determine if a mental impairment exists; carefully reviewing the case record and recording the pertinent symptoms, signs, and laboratory findings.[20] If Defendant finds a mental impairment, she must further determine the presence or absence of certain medical findings deemed particularly relevant to the ability to work. These are referred to as the "Part A" criteria in 20 C.F.R. § 404.1520a(b)(2). Defendant must then evaluate the degree of functional loss resulting from the impairment, using the "Part B" criteria found in 20 C.F.R. § 404.1520a(b)(3). Defendant's conclusions must be recorded on a standard form, called the Psychiatric Review Technique Form (PRT form),[21] which tracks the listing requirements and evaluates the claimant under the Part A and B criteria.[22]

## ALJ's Decision

In this case, the ALJ determined at step one that Plaintiff had not been engaged in substantial gainful activity since the alleged onset date of disability, December 15, 1999. At step two, the ALJ determined that Plaintiff had made the requisite threshold showing of a medically severe impairment or combination of impairments, to wit: a history of paranoid schizo-

13. *See id.* (citing 20 C.F.R. §§ 404.1520, 416.920 (1986)).

14. *Id.*

15. *See Bowen v. Yuckert,* 482 U.S. 137, 140–42, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987) (discussing five-step analysis); 20 C.F.R. § 404.1520(b)-(f).

16. *See* Listing of Impairments in Appendix 1, Subpart P, Regulations No. 4, 20 CFR §§ 404.1520(d) and 416.920(d).

17. *See Williams,* 844 F.2d at 750 (quoting *Bowen v. Yuckert,* 107 S.Ct. at 2291).

18. *See id.* (citations omitted); *accord White,* 271 F.3d at 1258 (at fifth step, burden of proof shifts to Commissioner to show that claimant retains the functional capacity to do specific jobs).

19. *Cruse v. United States Department of Health and Human Services,* 49 F.3d 614, 617 (10th Cir.1995).

20. 20 C.F.R. § 404.1520a(b)(1).

21. 20 C.F.R. § 1520a(d).

22. *Cruse,* 49 F.3d at 617 (citations omitted).

phrenia and left knee pain. Proceeding to step three, the ALJ determined that the impairments were not conclusively presumed to be disabling, because they were not listed nor equivalent to one of the listed impairments. Proceeding to step four, the ALJ determined that the impairments prevented Plaintiff from performing the work he has performed in the past.

Finally, the ALJ proceeded to step five. He found that even giving Plaintiff the benefit of the doubt, Plaintiff's physical disability was not severe; and that Plaintiff had "the residual functional capacity to perform the exertional and nonexertional requirements of sedentary and a limited range of light work activity . . ."

The ALJ concluded that Plaintiff's mental impairment, paranoid schizophrenia, was not severe, in that Plaintiff had a "mild degree of limitation with respect to activities of daily living, and a moderate degree of limitation in maintaining social functioning;" and a "mild to moderate degree of limitation with respect to maintaining concentration, persistence or pace, provided he is compliant with his medication regimen." The ALJ further found that there was no evidence indicating that Plaintiff would have "any repeated episodes of decompensation, each of extended duration . . . and the evidence does not establish the presence of 'C' criteria."

**Analysis and Discussion**

■ The ALJ's decision must be reversed because it is not supported by substantial evidence and the ALJ did not apply the correct legal standards in all respects. In concluding that Plaintiff's mental impairment was not severe, the ALJ rejected the opinions of two treating psychiatrists, Drs. Patel and Anya, and accepted the opinion of a consultative psychologist, Dr. Chance. A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight, if it supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record.[23] A treating physician's opinion is entitled to greater weight because the physician generally is more familiar with a claimant's medical condition than other physicians.[24] Thus, such an opinion must be given substantial weight unless good cause is shown to disregard it.[25]

The ALJ stated that the opinion of Dr. Patel is ". . . not supported by any treatment records," noting that although Dr. Patel states he has treated Plaintiff periodically since 1997, there are no treatment records evidencing this. Even if the record does not include treatment records back to 1997, the record does include treatment records from July 2000 forward. These records document Dr. Patel's treatment of Plaintiff from July 2000 to August 2001 at Truman Medical Center Behavioral Health. The treatment records include Dr. Patel's opinions that Plaintiff's mental impairment is severe and his condition guarded. The ALJ similarly noted that Dr. Anya produced no treatment records supporting her similar opinion of the severity of Plaintiff's mental disability. But there are records of Dr. Anya's treatment of Plaintiff at Western Missouri Mental Health Center from July 2001 to October 2001, a three month period in which Plaintiff was hospitalized. These records note that this was Plaintiff's third hospitalization at Western Missouri Mental Health, his first hospitalization there was in 1999.

**23.** *Castellano v. Secretary of Health & Human Services*, 26 F.3d 1027, 1029 (10th Cir.1994).

**24.** *Kemp v. Bowen*, 816 F.2d 1469, 1476 (10th Cir.1987).

**25.** *Goatcher v. United States Department of Health and Human Services*, 52 F.3d 288, 289–290 (10th Cir.1995) (citation omitted).

These records also note that Plaintiff was first diagnosed in 1999 as having chronic paranoid schizophrenia. The ALJ did not address any of this evidence and did not provide specific, legitimate reasons to explain why he rejected it. Nor did the ALJ identify other substantial evidence in the record that is inconsistent with the opinions of the treating physicians.[26]

Rather, the ALJ apparently rejects the opinions of these treating physicians for the same reason he rejects Plaintiff's testimony about the severity of his condition. The record demonstrates that when Plaintiff takes his prescribed medication, he reports improvement in his condition, and treatment records report objective findings of improvement. Dr. Chance opined that when Plaintiff takes his medications, his mental condition is in remission. But, as the record demonstrates, Plaintiff is not always compliant. He sometimes does not take his medications, and when he does not, his symptoms and condition worsen.

Failure to follow prescribed treatment is relevant in evaluating the credibility of Plaintiff's subjective complaints. More importantly, a claimant will be found not disabled when he fails to follow prescribed treatment without good reason.[27] In *Teter v. Heckler*,[28] the Tenth Circuit identified four elements a court should consider when reviewing whether a denial of disability benefits is warranted for failure to follow prescribed treatment: (1) the treatment at issue should be expected to restore the claimant's ability to work; (2) the

treatment must have been prescribed; (3) the treatment must have been refused; and (4) the refusal must have been without justifiable excuse.[29] Each of these elements must be supported by substantial evidence.[30] Moreover, in determining whether the claimant has an acceptable reason for failure to follow prescribed treatment, the ALJ must consider the claimant's limitations, including mental limitations.[31]

The ALJ did not undertake the analysis required in *Teter*. Nor did he consider whether Plaintiff's chronic paranoid schizophrenia constituted a justifiable excuse for his periodic non compliance. Notably, the treating physicians opined that Plaintiff suffers from poor insight, poor judgment, incoherence and illogical thought processes. Although the records indicate that these symptoms improved with medication, the records also indicate that the prescribed medication was being changed because of side effects. The treatment records note that in July 2001, Dr. Patel had significantly decreased Plaintiff's dosage of Risperdol because of side effects and planned to prescribe another medication. Plaintiff's mother testified that in July 2001, when Dr. Patel decreased Plaintiff's dose of Risperdol, Plaintiff became agitated, delusional and threatening. He would not comply with her requests to go to the hospital. This episode led to a three month hospitalization in 2001.

The ALJ's analysis at step five was also deficient. Although the ALJ evaluated the degree of functional loss as mild, using the "Part B" criteria,[32] and found no evidence

---

**26.** *See Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir.1995) (quotation omitted); *see also* Social Security Ruling 96–2p (stating that where a treating physician's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight).

**27.** 20 C.F.R. § 404.1530(b).

**28.** 775 F.2d 1104, 1107 (10th Cir.1985).

**29.** *Id.* (citations omitted).

**30.** *Id.*

**31.** 20 CFR § 404.1530(c).

**32.** 20 C.F.R. § 404.1520a(b)(3). The ALJ found a "mild degree of limitation with respect to activities of daily living, and a moderate degree of limitation in maintaining social functioning;" and a "mild to moderate degree

of "Part C" criteria,[33] there is no reference to any evidence in the record supporting these ratings or evaluations. And, although the ALJ relies on a Psychiatric Review Technique form apparently filled out by a medical advisor, Robert Schulman Ph.D., and supplemented by Richard Diller, Ph.D., the advisors did not even fill out those portions of the form. In short, the ALJ's ratings of mild or moderate degrees of limitation in daily living activities, social functioning, maintaining concentration and other activities, are neither explained, discussed nor supported with reference to the record.

## Conclusion

For these reasons, the Court must reverse Defendant's decision. Plaintiff urges the Court to reverse and remand for an immediate award of benefits. This is appropriate relief when additional fact finding would serve no useful purpose.[34] But, remand is more appropriate when the administrative record has not been fully developed, or where the ALJ makes minimal findings that are not supported by adequate evaluation of the evidence in the record.[35]

Therefore, the Court finds that this action should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to conduct further proceedings as follows:

> Upon receiving the court's final order of remand, the Appeals Council of the Social Security Administration will remand this case and direct the ALJ to reassess the severity of Plaintiff's mental impairment, in accordance with the statute and regulations, including the evaluative procedure detailed in 20 C.F.R. § 404.1520a. The ALJ will further consider the records and opinion of Plaintiff's treating physicians, Dr. Patel and Dr. Anya, and give specific reasons for the weight given to his resultant findings. The ALJ will reassess his conclusions about Plaintiff's credibility and the severity of Plaintiff's mental impairment, including considering whether Plaintiff's mental impairment constitutes good cause or justifiable excuse for his non compliance with prescribed treatment or medication.

Defendant's Motion to Remand (Doc. 13) shall be **GRANTED**. Entry of a final judgment reversing and remanding this case will begin the appeal period which determines the thirty (30) day period during which a timely application for attorney

---

of limitation with respect to maintaining concentration, persistence or pace, provided he is compliant with his medication regimen ..." and no evidence of "any repeated episodes of decompensation, each of extended duration ..."

**33.** The limitations identified in the "paragraph B" and "paragraph C" criteria on the PRTF are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment as used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF. *See* Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, Social Security Ruling 96–8p, 1996 WL 374184, at 4 (July 2, 1996).

**34.** *Sorenson v. Bowen,* 888 F.2d 706, 713 (10th Cir.1989) (citations and quotations omitted).

**35.** *See Taylor v. Callahan,* 969 F.Supp. 664, 673 (D.Kan.1997) (citations omitted).

fees may be filed under the Equal Access to Justice Act, 28 U.S.C. § 2412.

**IT IS SO ORDERED.**